**UNITED STATES WRESTLING FEDERATION, Plaintiff,**

v.

**WRESTLING DIVISION OF THE AAU, INC., and United States Olympic Committee, Defendants.**

Civ. A. No. C 80–1322.

United States District Court,
N. D. Ohio, E. D.

Aug. 20, 1982.

As Amended Oct. 1, 1982.

Eben G. Crawford, Cleveland, Ohio, for plaintiff.

William H. Wallace, Cleveland, Ohio, Peter C. Alkalay, Nitkin, Alkalay, Handler & Robbins, New York City, for defendants.

## MEMORANDUM OPINION AND ORDER

ANN ALDRICH, District Judge.

This case is yet one more round in a lengthy dispute between the United States Wrestling Federation ("USWF"), and the Wrestling Division of the Amateur Athletic Union, Inc. ("WD/AAU") over the right to act as a national governing body with respect to amateur wrestling. The parties here, who have gone to the mat successively before the United States Olympic Commit-

tee ("USOC"); an arbitration panel, whose award was confirmed by a federal district court, and by the Court of Appeals for the Seventh Circuit; the Superior Court of the District of Columbia; the Federation International de Lutte Amateur ("FILA"); and the United States Congress, have now come before this Court in what hopefully will be the penultimate round of this match.

Plaintiff USWF seeks (1) a declaratory judgment that a 1980 rider amending Section 203 of the Amateur Sports Act of 1978 prohibits defendant WD/AAU from exercising the powers of a national governing body (NGB) specified in Section 203; and (2) ancillary injunctive relief against both defendant WD/AAU and defendant USOC. Defendant WD/AAU's counterclaim seeks a declaratory judgment that the rider does not apply to it, or alternatively, that if the rider does apply to it, then the rider is unconstitutional.

This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and § 1332.

Before the Court are cross-motions for Summary Judgment. On consideration of the pleadings, affidavits, and stipulations, and after lengthy oral argument, it is clear that there is no genuine issue as to any material fact, and that, as a matter of law, plaintiff USWF's motion must be granted, and defendant WD/AAU's motion must be denied.

## FINDINGS OF FACT

The following findings of fact are drawn from those stipulated to by the parties.[1]

1. Plaintiff USWF is a not-for-profit corporation organized and existing under the laws of the State of Oklahoma, with its principal place of business located at Stillwater, Oklahoma.

2. Defendant WD/AAU is a not-for-profit corporation organized and existing under the laws of the State of Ohio, with its

---

[1]. The Court also finds those facts, not expressly set forth herein, which are contained in the Stipulation (Appendix A attached to USWF's Brief in Support) and Supplemental Stipulation attached to WD/AAU's Brief. These include the Findings of Fact of the Superior Court of the District of Columbia in *United States Wrestling Federation v. United States Olympic Committee*, Civil Action No. 13460–78.

principal place of business located in Lincoln, Nebraska.

3. Both the USWF and the WD/AAU operate national programs for the promotion and development of amateur wrestling.

4. Defendant USOC is a corporation chartered by the United States Congress in 1950. P.L. 81–805 (81st Cong. 2d Sess.) September 21, 1950; 64 Stat. 889. In 1978, the USOC Congressional Charter was amended by a legislative enactment popularly called "The Amateur Sports Act of 1978." P.L. 95–606 (95th Cong. 2d Sess.) November 8, 1978; 92 Stat. 3045 ("the Act"). USOC's principal place of business is located at Colorado Springs, Colorado, and it operates in all fifty states and the District of Columbia.

5. International style amateur wrestling is on the program of the Olympic Games which have been conducted and controlled since 1896 by the International Olympic Committee ("IOC"), which is headquartered in Geneva, Switzerland.

6. The IOC governs the Olympic movement and exercises all rights over the Olympic Games. Every organization that plays any part in the Olympic movement must accept the authority of the IOC and be bound by the rules of the IOC.

7. Pursuant to IOC Rule 24, each nation wishing to participate in the Olympic Games must maintain a National Olympic Committee ("NOC") recognized by the IOC. Each NOC must enforce the rules and by-laws of the IOC. The IOC recognizes the USOC as the NOC for the United States.

8. In addition to recognizing a NOC in each participating nation, the IOC also designates the International Federation which governs each Olympic sport. The IOC has designated the Federation Internationale de Lutte Amateur ("FILA"), also headquartered in Switzerland, to act as the International Federation for international style amateur wrestling.

9. FILA establishes rules and regulations (including eligibility rules for athletes) for international style amateur wrestling, supervises Olympic and international competition in amateur wrestling, and selects and trains officials for such competition.

10. FILA elects *one* amateur wrestling organization from each nation as its affiliate member for that nation; and FILA, by virtue of its designation by the IOC as the International Federation and its power to determine the eligibility of amateur wrestlers and officials to participate in international competition, controls international style amateur wrestling internationally through, *inter alia*, its national affiliate members around the world.

11. IOC by-law V(5) to Rule 24 provides that a NOC (such as the USOC) "must not accept as members more than one national federation for each sport, and that federation must be affiliated to the relevant [international federation] recognized by the IOC".

12. Pursuant to its Congressional Charter and the published rules and regulations of the International Olympic Committee, the USOC recognizes one United States amateur sports organization as the national governing body ("NGB") for each Olympic sport, including amateur wrestling, 36 U.S.C. § 391. The national governing body ("NGB") so recognized is the member in the United States of the international sports federation recognized by the International Olympic Committee for the purpose of administering the competitions on the Olympic program. USOC Const.Art. IV, § 4. Each NGB so recognized is the USOC's "Group A" member for its sport.

13. Under Section 203 of the Amateur Sports Act, 36 U.S.C. § 393, each USOC-recognized NGB is authorized to exercise certain powers, including without limitation representing the United States in the international sports federation for its particular sport.

14. At all times material hereto, WD/AAU has served as the USOC-recognized NGB and USOC Group A member for amateur wrestling. As such, WD/AAU has exercised and is exercising all of the powers specified in Section 203, including representing the United States in the interna-

tional sports federation for amateur wrestling, the Federation Internationale de Lutte Amateur ("FILA").

15. On June 13, 1977, USWF, acting pursuant to Article V, Section 6 of the USOC Constitution then in effect, applied to the USOC to replace WD/AAU as the Group A member for amateur wrestling. USWF's application was heard by the Executive Board of the USOC at its meeting at Squaw Valley, California on July 30, 1977. The Executive Board denied USWF's application. Thereafter, USWF, again acting pursuant to Article V, Section 6 of the USOC Constitution, filed with the American Arbitration Association's ("AAA") Chicago, Illinois office a Demand for Arbitration dated July 30, 1977. WD/AAU, also acting pursuant to Article V, Section 6 of the USOC Constitution, filed a Demand for Arbitration dated July 29, 1977 with the AAA's New York, New York office. WD/AAU subsequently withdrew its demand.

16. The arbitration proceeded forward in Chicago before a panel of three arbitrators. By an Award dated September 7, 1978 the three arbitrators unanimously found that:

> The UNITED STATES WRESTLING FEDERATION has established its claim for recognition as the Group A member of the UNITED STATES OLYMPIC COMMITTEE for AMATEUR WRESTLING and is entitled to replace the AAU WRESTLING COMMITTEE, AMATEUR ATHLETIC UNION OF THE UNITED STATES, INC. as such member.

This award was subsequently confirmed by the courts of the United States. *United States Wrestling Federation v. Wrestling Division of the AAU, Inc.*, (N.D.Ill.1979) Case No. 78C4307, *aff'd.* 605 F.2d 313 (7th Cir. 1979).

17. Following entry of the Arbitration Award, USOC through its Executive Board determined that it would not recognize USWF as its NGB and Group A member for wrestling, until USWF became a member of FILA. Consequently, USWF has not replaced WD/AAU as the USOC's NGB and Group A member for amateur wrestling.

18. In December 1978, USWF filed suit against the USOC in the Superior Court of the District of Columbia to, among other things, compel the USOC to recognize USWF as its NGB and Group A member for amateur wrestling in accordance with the Arbitration Award. *United States Wrestling Federation v. United States Olympic Committee, et al.*, Civil Action No. 13460–78. Defendant WD/AAU intervened in this action seeking a judgment dismissing the complaint and declaring that nothing in the Award prevented WD/AAU from representing the United States in FILA. Plaintiff USWF counterclaimed against WD/AAU seeking an order which, among other things, would enjoin WD/AAU from exercising any of the powers of an NGB and which would compel WD/AAU's resignation from FILA. On April 19, 1979, Judge Stewart of the Superior Court issued conclusions of law providing, *inter alia*, (a) that as a result of the Award, USWF had acquired the status of "NGB designate" and the right to replace WD/AAU as the NGB for amateur wrestling, *contingent upon USWF's election to FILA membership*; (b) that WD/AAU remained, pending election of USWF to FILA membership, the USOC's NGB and Group A member for amateur wrestling; and (c) that USWF was entitled to receive WD/AAU's full recommendation and support in its efforts to become a member of FILA and the USOC's NGB and Group A member for amateur wrestling. The Court issued an order providing, *inter alia*, that "WD/AAU is authorized to continue as the United States member of FILA and as Group A member for amateur wrestling in the United States until such time as USWF becomes a member of FILA," and mandatorily enjoined USOC and WD/AAU to recommend and support USWF's application for membership in FILA during the period from entry of the order to and including the FILA Congress of July, 1980. Neither party, nor the intervenor, appealed this decision.

19. USWF applied to FILA for membership. At its biennial meeting in Moscow in July 1980, the FILA Congress did not approve USWF's application.

20. On July 8, 1980, President Carter signed into law the Supplemental Appropriations and Rescission Act of 1980, P.L. 96–304 (96th Cong. 2d Sess.) July 8, 1980, 94 Stat. 857. This act contains the following provision ("the rider") amending § 203 of the Act:

> ... [N]one of the national governing body authority specified in section 203 of Public Law 95–606 [36 U.S.C. § 393] as hereby amended shall be exercised by a national governing body member of the [United States Olympic] Committee for a particular sport, when another amateur sports organization has been declared (pursuant to binding arbitration proceedings prescribed by the organic documents of the Committee) entitled to replace such national governing body as the member of the Committee for that sport.

21. WD/AAU continues to exercise the powers of the USOC's NGB and Group A member for amateur wrestling.

## CONCLUSIONS OF LAW

### I.

At issue on the cross-motions for Summary Judgment are: (1) whether the USWF has standing to bring an action to enforce the rider; (2) whether the rider applies to the results of the arbitration between USWF and WD/AAU; and, if so, (3) whether the rider is constitutional.

■■■ Defendant WD/AAU's contention that this Court lacks subject matter jurisdiction because plaintiff USWF has no private right of action is untenable. Where a statute, such as the rider, does not *expressly* provide a private right of action to enforce its provisions, the intention of Congress to provide such a right may be implied from the language of the statute or from its legislative history. *Transamerica Mortgage Advisors v. Lewis*, 444 U.S. 11, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979).

Here, from the legislative history it is abundantly clear that the rider was enacted because the USOC, unfortunately, either could not, or would not, implement the clear requirements of its charter. The Report of the Senate Appropriations Committee, which inserted the rider into the Act (H.R. 7542) stated as follows:

> Authorization for the appropriated funds [to the USOC] is drawn from Public Law 95–606 (Amateur Sports Act of 1978) and Public Law 95–482. The former Act gives the Olympic Committee authority to coordinate the international aspects of amateur sport, and establishes a mechanism principally involving binding arbitration for finally resolving amateur sports disputes, including those involving determination of the organization entitled to act as the national governing body in this country for a particular sport.
>
> *In 1978, under procedures prescribed by the USOC Constitution, a final and binding arbitration award was entered by three independent arbitrators, declaring that the national governing body in the sport of wrestling should be changed. The matter appears instead to have been referred by the USOC to foreign sports bodies, beyond the reach of our law.*
>
> *Such a result was clearly not Congress' intention when it passed Public Law 95–606 [Amateur Sports Act of 1978], and the language of the bill is intended to give further effectiveness to final and binding arbitration awards under the USOC Constitution, by requiring that the appropriated funds not be used (except upon a finding of a national interest by the Secretary of Commerce) for the programs of a national governing body which, as in wrestling, has finally lost an arbitration decision to another group, and by providing that a national governing body so situated shall cease to exercise the NGB powers specified in Section 203 of the Act as amended."* S.Rep.96–829 (96th Cong. 2d Sess.), pp. 241–242. (Emphasis added).

It is unmistakable that the wrestling situation provided the impetus for the rider,

and that the USWF was an intended beneficiary. In these circumstances, it is absurd to suggest that only the derelict USOC has standing to enforce the rider against itself. Such construction would clearly render the rider vain and nugatory.

*DeFrantz v. United States Olympic Committee*, 492 F.Supp. 1181 (D.C.1980), aff'd (D.C.Cir.1980), relied upon by defendant Wrestling Division of the AAU, is simply not apposite. In that case the Court found that the Amateur Sports Act of 1978 did not confer upon individual athletes a right to compete in the Olympics if the USOC determines not to enter a team. Therefore, the Court concluded, the Act could not be construed as conferring *sub silentio* a private cause of action to enforce a non-existent right. The references by the *DeFrantz* Court to 36 U.S.C. § 395 are merely *obiter*, and furthermore are not controlling where a plaintiff seeks to enforce the rider, rather than § 395. Thus, this court concludes that USWF has standing to bring this action to enforce the rider.

## II.

### A.

■ Nor can there be any question that the rider applies to defendant WD/AAU. In interpreting legislation, this Court is obliged to look first to the language of a statute itself, and to follow its plain meaning unless that meaning is clearly contrary to demonstrated legislative intent, or produces an absurd result. *Bread Pol. Action Committee v. Fed. Elect. Comm.*, —— U.S. ——, ——–——, 102 S.Ct. 1235, 1237–38, 71 L.Ed.2d 432 (1982).

The rider provides:

... [N]one of the national governing body authority specified in Section 203 of Public Law 95–606 as hereby amended shall be exercised by a national governing body member of the Committee for a particular sport when another amateur

sports organization has been declared (pursuant to binding arbitration proceedings prescribed by the organic documents of the Committee) entitled to replace such national governing body as the member of the Committee for that sport.

There is no question but that the WD/AAU is "a national governing body" of the USOC; nor is there any question but that the USWF is "another amateur sports organization [which] has been declared (pursuant to binding arbitration proceedings prescribed by the organic document of the Committee) entitled to replace such national governing body as the member of the Committee for that sport." [2]

■ Where, as here, the statutory language is eminently clear and unambiguous, this Court need not inquire into the legislative history. *Bread, supra; United States v. Board of Education of Garfield Heights City School District*, 435 F.Supp. 949, 951 (N.D.Ohio 1976), citing *H. Wetter Mfg. Co. v. United States*, 458 F.2d 1033, 1035 (6th Cir. 1972). However, as indicated, *supra*, such inquiry establishes beyond any doubt the fact that, indeed, the legislation in question is intended to apply to the defendant WD/AAU.

### B.

■ That Congress may amend a statute when it disagrees with a judicial interpretation thereof, and that such amendment must be given effect, is beyond cavil. *See, e.g., United States v. Guthrie*, 387 F.2d 569 (4th Cir. 1967). Congress was expressly dissatisfied with the referral of the dispute as to who should be the NGB for wrestling to "foreign sports bodies, beyond the reach of our law", and amended the Act to prohibit an NGB from exercising the authority vested in it by § 203 after it had finally lost an arbitration decision to another group. Thus, the rider may be viewed as either corrective of the Superior Court decision, or

---

**2.** The argument that USWF was not declared entitled to replace WD/AAU as a member of the USOC plainly misses the mark. The arbitration award clearly entitles the USWF to replace the WD/AAU, and the conclusion of the

Superior Court, making such entitlement contingent upon action by FILA apparently misconstrued Congressional intent, as explained in the legislative history of the rider, *supra*.

as filling the void created when that decision expired without achieving the result intended and expected by that Court and by the Congress. Further, the rider constitutes a change in the surrounding legal climate, so as to preclude any claim of *res judicata*, or of any vested rights in the judgment. *cf. Fleming v. Rhodes*, 331 U.S. 100, 67 S.Ct. 1140, 91 L.Ed. 1368 (1947).

■■■■ The rider cannot be viewed as retroactive legislation, inasmuch as it merely provides a remedy for enforcing the arbitration award, without altering the substantive rights of the parties. Furthermore, the rider constitutes a rational measure in furtherance of the Congressional policy evidenced in the Amateur Sports Act, and it cannot be said that WD/AAU could not anticipate losing its NGB status as a result of the arbitration. *Cf. Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 96 S.Ct. 2882, 49 L.Ed.2d 752 (1976). WD/AAU having exercised its NGB powers pursuant to a grant of Congress, subject to a reservation to amend or revoke such grant, cannot be heard to challenge such amendment. *Hamilton Gaslight & Coke Co. v. City of Hamilton*, 146 U.S. 258, 13 S.Ct. 90, 36 L.Ed. 963 (1892).

■■■■ The claim that the rider is a bill of attainder is patently frivolous. No punishment is involved, nor legislative intent to punish an individual or group is evidenced, nor a legislative determination of guilt and sanctions. *United States v. Lovett*, 328 U.S. 303, 66 S.Ct. 1073, 90 L.Ed. 1252 (1946); *Nixon v. Administrator*, 433 U.S. 425, 97 S.Ct. 2777, 53 L.Ed.2d 867 (1977), *United States v. Brown*, 381 U.S. 437, 85 S.Ct. 1707, 14 L.Ed.2d 484 (1965).

C.

This Court shares defendant's concern that the strict application of the statute in question may, for a time, strip the United States of the ability to field wrestling teams for major international competitions, including the 1984 Olympics. That, however, is a matter for Congress to deal with, and Congress has, in fact dealt with this possibility.

The Amateur Sports Act of 1978 plainly created a mechanism for bringing an enforceable challenge to an existing NGB. § 395(b)(1) provides that

Any amateur sports organization may seek to replace an incumbent as the national governing body for a particular sport by filing with the [USOC] a written application for such recognition.

A properly and timely filed application must be heard, and the

. . . applicant amateur sports organization must establish by a preponderance of the evidence that it meets the criteria for recognition as a national governing body under section 391(b) of this title, and that—

(A) the national governing body does not meet the criteria of section 391(b) or 392 of this title; or

(B) it more adequately meets the criteria of section 391(b) of this title, is capable of more adequately meeting the criteria of section 392 of this title, and provides or is capable of providing a more effective national program of competition, than the national governing body in the sport for which it seeks recognition. § 393(b)(3).

The Act further provides that following a challenge for NGB status before the USOC, the USOC *shall* either uphold the NGB, revoke its recognition, and declare a vacancy in the national governing body for that sport, or revoke the recognition of the NGB and recognize the applicant as the national governing body. § 395(b)(4).

Clearly, Congress anticipated, and accepted, the possibility of a hiatus from time to time in recognizing NGB's for particular sports; this conclusion is inescapable in light of other provisions of the Act which would lead to the same result.[3]

**3.** In Section 201(c)(1) of the Act (36 U.S.C. § 391(c)(1), Congress provided that if, within two years from enactment, an existing NGB did not bring itself into compliance with the stated NGB standards set forth in Section 201(b), the

Thus, Congress having spoken in the plainest of terms,

> [T]his Court's individual appraisal of the wisdom or unwisdom of a particular course consciously selected by the Congress is to be put aside in the process of interpreting a statute. Once the meaning of an enactment is discerned and its constitutionality determined, the judicial process comes to an end. We do not sit as a committee of review, nor are we vested with the power of veto ... *Tennessee Valley Authority v. Hill*, 437 U.S. 153, 194–195, 98 S.Ct. 2279, 2301–2302, 57 L.Ed.2d 117 (1978).

### III

### REMEDY

Both sides have asked the Court, at this juncture, to merely advise as to the constitutionality of the rider, and to postpone injunctive remedy to a later date, as in their view, the remedy would involve the taking of additional evidence on such matters as "irreparable injury, balance of harm," etc. This Court cannot agree. Our expression of an opinion in this case, absent any remedy, would violate the long established principles of Article III of the United States Constitution, which has traditionally been interpreted to prohibit the exercise of federal jurisdiction for advisory purposes only. See *Muskrat v. United States*, 219 U.S. 346, 31 S.Ct. 250, 55 L.Ed. 246 (1911). It is our obligation, upon interpreting plain and clear legislation, to give that legislation the effect intended by Congress. This is not the time to balance injury or harm. Congress has already done that. *TVA v. Hill, supra*, at 193–194, 98 S.Ct., at 2301–2302.

Defendant WD/AAU is hereby permanently enjoined from exercising any of the powers of a national governing body specified in Section 203 of the Amateur Sport Act of 1978, as amended, 36 U.S.C. § 393; and is hereby mandatorily enjoined to resign its membership in, and sever all relationships with, FILA. Defendant USOC is hereby ordered to terminate its recognition of defendant WD/AAU as its Group A member and the national governing body for amateur wrestling in the United States, including its recognition of WD/AAU's right to represent the United States in FILA and its right to exercise any other national governing body powers set forth in Section 203 of the Amateur Sports Act of 1978, 36 U.S.C. § 393.

Judgment is hereby entered for the plaintiffs at the cost of defendant, Wrestling Division of the AAU.

IT IS SO ORDERED.

---

USOC "shall" *revoke* or suspend its recognition of the NGB;

In Section 205(a)(3)(C) of the Act (36 U.S.C. § 395(a)(3)(C), Congress provided that if, following a formal complaint before the USOC or the arbitrators, it is held that an NGB is not in compliance with the stated Section 201(b) NGB standards, the NGB "shall" be placed on probation or its recognition *revoked*.

In Section 205(b)(4) of the Act (36 U.S.C. § 395(b)(4), Congress provided that following a challenge for NGB status before the USOC or the arbitrators, the USOC or the arbitrators "shall" either uphold the NGB, *revoke* its recognition (and either declare a vacancy or install the challenger), or place the NGB on probation.