**Jeffrey MICHELS, Plaintiff-Appellee,**

v.

**UNITED STATES OLYMPIC COMMITTEE, Defendant-Appellant.**

No. 84–2177.

United States Court of Appeals, Seventh Circuit.

Argued July 23, 1984.

Decided Aug. 16, 1984.

**156**

Edward T. Colbert, Beveridge, DeGrandi & Kline, Washington, D.C., for defendant-appellant.

Michael Dockterman, Wildman, Harrold, Allen & Dixon, Chicago, Ill., for plaintiff-appellee.

Before CUMMINGS, Chief Judge, and BAUER, and POSNER, Circuit Judges.

BAUER, Circuit Judge.

Defendant United States Olympic Committee (USOC) appeals from the district court's preliminary injunction ordering the USOC both to name Plaintiff Michels as a conditional alternate to the 1984 United States Olympic Weightlifting Team and to address the merits of Michels' claims under International Olympic Committee (IOC) procedures. The district court found jurisdiction over Michels' claims under the Amateur Sports Act of 1978, 36 U.S.C. § 371–396 (1978).

We hold that Michels has no private cause of action under the Amateur Sports Act. Because Michels is not entitled to the relief he seeks, the district court's preliminary injunction is dissolved.

### I

The IOC owns the rights to the Olympic Games and governs their operation. Each nation is represented by an IOC-recognized national olympic committee, and the national committees in turn recognize a national governing body (NGB) for each sport. The IOC recognizes the USOC as the olympic committee of the United States, and the USOC recognizes the United States Weightlifting Federation (USWF) as the NGB for weightlifting. The IOC also has separate committees to oversee each sport internationally. The International Weightlifting Federation (IWF) governs wrestling, and it too recognizes the USWF. This scheme results in initial confusion.

In August 1983, Michels, an American amateur weightlifter, competed at the Pan American Games in Venezuela. The athletes at those games were required to take a test to determine if they had ingested testosterone, the use of which is banned under IOC "anti-doping" rules. Michels' test results showed an impermissible testosterone level according to the IOC rules. The IWF therefore suspended Michels from international competition for two years. Because this suspension precluded Michels from competing at the 1984 Olympic Games, the USWF refused to let Michels compete for a position on the American weightlifting team.

In May 1984, Michels sued the USOC, the IWF, and the USWF in district court, claiming that his test results were invalid and that the defendants were required to conduct a hearing on his claim. Specifically, Michels alleged that the USOC had violated the Amateur Sports Act, that the IWF had violated its constitution and by-laws, and that all three defendants had engaged in a group boycott in violation of the Sherman Act, 15 U.S.C. § 1 (1955).[1] On May 11, the district court issued a temporary restraining order permitting Michels to participate in the Olympic trials on May 11 and 12. Michels qualified as an alternate on the twelve-member team.

Later in May, the IWF conducted a proceeding in Italy to consider Michels' claims, but sustained his suspension. In June, the district court ruled that the IWF proceeding did not constitute a "hearing" under the IWF constitution and by-laws, and entered a default judgment against the IWF declaring Michels' suspension invalid. The USWF nonetheless refused to name Mi-

---

1. This appeal concerns only the Amateur Sports Act of 1978, upon which the district court based the preliminary injunction. We note that the district court expressed doubt about Michels' Sherman Act claim. *See* May 11, 1984, tr. at 56–57. The IWF is not a party to the injunction.

chels as an alternate on the Olympic team on the ground that the entire team could be disqualified if an ineligible athlete were on its roster.

On July 7, the USOC convened a special panel to hear Michels' claims. The panel ruled against Michels. On July 12, the USOC administrative committee adopted the panel's recommendation. Because the deadline for submitting team rosters was July 14, the district court granted Michels' motion for a preliminary injunction as the only way to "protect Michels against the irreparable harm that would be occasioned by his total omission from the designated team." The injunction required the USOC and the USWF to name Michels as an alternate to the team subject to a determination of Michels' rights by the IOC. The court also ordered the USOC to address the merits of Michels' claims under available IOC procedures. Later that day, the USOC requested an emergency stay of the district court's order. We denied the motion.

Because the 1984 Olympic Games were scheduled to begin soon, we expedited this appeal and heard oral argument on July 23. We issued our decision on July 24 dissolving the injunction.[2] This opinion elaborates the reason for our decision.

## II

■ The USOC was chartered by Congress in 1950. The Amateur Sports Act of 1978 substantially revised that charter. The principal purpose of the Act was to provide a means of settling disputes be-tween organizations seeking to be recognized as the NGB for a particular sport and to shield amateur athletes from being harmed by these struggles. *See* S.Rep. No. 770, 95th Cong., 2d Sess. 2–3 (1978).

■ The Act contains no express private cause of action. Michels therefore may not receive relief in federal court under the Act unless there exists an implied cause of action. In *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), the United States Supreme Court stated that four factors are relevant in determining whether a statute contains an implied cause of action: whether the plaintiff is a member of a class that the statute intends to benefit, whether there is an indication of Congress's intent to create or deny a private remedy, whether a private remedy would be consistent with the statute's underlying purposes, and whether the cause of action traditionally is relegated to state law. Recent Supreme Court decisions, however, have emphasized that the issue ultimately is one of congressional intent. *See Merrill Lynch, Pierce, Fenner & Smith v. Curran*, 456 U.S. 353, 378–79, 102 S.Ct. 1825, 1839, 72 L.Ed.2d 182 (1982); *Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 23–24, 100 S.Ct. 242, 249, 62 L.Ed.2d 146 (1979).

The legislative history of the Act clearly reveals that Congress intended not to create a private cause of action under the Act.[3] The Act as originally proposed contained an "Amateur Athlete's Bill of Rights," which included a civil cause of action in federal district court for any ath-

**2.** On July 26, the IOC conducted a hearing in Los Angeles to consider Michels' claims. On July 27, the IOC sustained Michels' suspension. The Olympic weightlifting competition began on July 29.

**3.** Two other courts have considered whether a private right of action exists under the Amateur Sports Act. In *DeFrantz v. United States Olympic Committee*, 492 F.Supp. 1181 (D.D.C.), *aff'd without opinion*, 701 F.2d 221 (D.C.Cir.1980), the district court held that the Act did not establish a cause of action for athletes who sought to enjoin the USOC from barring United States athletes from participating in the 1980 Olympic Games in Moscow. Although Michels seeks a different remedy here, our legal conclusion is identical to the court's holding in *DeFrantz*. *See id.* at 1192.

In *United States Wrestling Federation v. Wrestling Division of AAU, Inc.*, 545 F.Supp. 1053 (N.D.Ohio 1982), *aff'd without opinion*, 711 F.2d 1060 (6th Cir.1983), the district court held that the plaintiff could challenge the defendant's status as the NGB for United States wrestling under a special 1980 rider to the Amateur Sports Act. The rider required the USOC to accept the results of arbitration regarding which group should be the NGB for a particular sport. The court stated that the plaintiff's remedy arose solely from the rider and not from the 1978 Act itself. This case thus is distinguishable from the case at hand.

lete against an NGB, educational institution, or other sports organization that threatened to deny the athlete's right to participate in certain events. *See* S. 2036, 94th Cong., 1st Sess. § 304(a) (1977). As the Senate Report explains, this bill of rights provision "met with strong resistance by the high school and college communities. Ultimately, the compromise reached was that certain substantive provisions on athletes' rights would be included in the USOC Constitution, and not in the bill." S.Rep. No. 770, 95th Cong., 2d Sess. 5–6 (1978). Congress omitted the bill of rights provision in the Act's final version. Congress thus considered and rejected a cause of action for athletes to enforce the Act's provisions.

Michels' arguments that the legislative history supports a private cause of action are unpersuasive. First, Michels refers to the judicial remedies for athletes mentioned in the 1977 Recommendation of the President's Commission on Olympic Sports (PCOS Report), upon which the Amateur Sports Act was based. Yet the PCOS Report was referring to the "Amateur Athlete's Bill of Rights," which was dropped from the final Act. Second, Michels' refers to a speech by USOC member Anita DeFrantz that is included in the Congressional Record. *See* 124 Cong.Rec. 12,856 (1978). Speaking in support of the Act before the USOC House of Delegates, DeFrantz stated that the Act allows athletes redress through arbitration and the courts. This single statement, which conflicts directly with the statutory language and legislative history, does not grant Michels a private cause of action.

Michels also claims that he is a member of the class that the Act was designed to benefit and that conferring a private cause of action for athletes is the only way to effectuate the Act's purposes. Because Congress clearly foreclosed a private cause of action, we decline to address these arguments. Once Congress's intent is determined, there is no need to "trudge through all four of the factors" in *Cort v. Ash. Merrill Lynch, Pierce, Fenner & Smith v. Curran,* 456 U.S. 353, 388, 102 S.Ct. 1825, 1844, 72 L.Ed.2d 182 (1982) (quoting *California v. Sierra Club,* 451 U.S. 287, 302, 101 S.Ct. 1775, 1783, 68 L.Ed.2d 101 (1981) (Rehnquist, J., concurring in judgment)).

### III

We sympathize with Michels' attempts to obtain an impartial examination of his objections to the testosterone testing methods. We nevertheless can grant him no relief. Here, "[t]he ultimate question is one of congressional intent, not one of whether this Court thinks it can improve upon that statutory scheme that Congress enacted into law." *Touche Ross & Co. v. Reddington,* 442 U.S. 560, 578, 99 S.Ct. 2479, 2490, 61 L.Ed.2d 82 (1979). The preliminary injunction is dissolved, and Michels' case is remanded with instructions to dismiss his claims under the Amateur Sports Act.

So Ordered.

POSNER, Circuit Judge, concurring.

I join the majority opinion. As that opinion explains, the legislative history of the Amateur Sports Act makes reasonably clear that Congress's omission to provide for private enforcement of the Act was deliberate. The Senate's original bill would have empowered the federal courts to enjoin the denial by any "sports organization" (which is broadly defined—probably broadly enough to embrace an international sports organization such as the International Weightlifting Federation) of an "eligible" amateur athlete's opportunity to participate in an international athletic competition such as the Olympic Games. See S. 2036, 95th Cong., 1st Sess., §§ 302(d)(g), 303(a), 304(a). This grant of power was dropped from the final bill—and not through inadvertence, either. In explaining the decision to drop it, the Senate Report notes that "strong resistance" to giving athletes substantive rights had resulted in a compromise whereby "certain substantive provisions on athletes' rights would be included in the USOC Constitution, and not in the bill." S.Rep. No. 770, 95th Cong., 2d

Sess. 6 (1978). Of course, if this "Constitution" were deemed a federal law, alleged deprivations of any athletes' rights created by it could be litigated in federal court just as if the Senate had retained the provisions of the original bill. But this would defeat the compromise; and as an original matter it is reasonably clear that the federal government's regulatory role in relation to the United States Olympic Committee would not make every dispute over the provisions of its constitution a dispute arising under federal law within the meaning of 28 U.S.C. § 1331. See generally *Bernstein v. Lind-Waldock & Co.*, 738 F.2d 179, 184–85 (7th Cir.1984). Any doubt on this score can be dispelled by the reflection that there can be few less suitable bodies than the federal courts for determining the eligibility, or the procedures for determining the eligibility, of athletes to participate in the Olympic Games.

I write separately, however, because there is another ground for reversal that I find as compelling as the one in the majority opinion. The only relevant duty imposed by the Act is the duty of the United States Olympic Committee to establish procedures for resolving disputes "involving any of its members and relating to the opportunity of an amateur athlete ... to participate in the Olympic Games ...." 36 U.S.C. § 382b. Michels' dispute relates to the opportunity of an amateur athlete to participate in the Olympic Games but does not involve any of the members of the United States Olympic Committee. His dispute is with the International Weightlifting Federation, an international organization that is not a member of the USOC. He has no dispute with the United States Weightlifting Federation, which is a member. It is the International Weightlifting Federation that has suspended him from international competition, not the U.S. Weightlifting Federation, which backed his unsuccessful effort to get the suspension lifted and backed off only when the international federation proved adamant. Although Michels named the U.S. Weightlifting Federation as a defendant, the question is not whether he might be able to get some kind of ancillary relief against the USWF in this lawsuit (if the Amateur Sports Act could be privately enforced), but whether he had a dispute with the USWF that the U.S. Olympic Committee did not act to resolve; only then would it be possible to argue that the USOC had violated a duty that section 382b lays on it. But Michels has no dispute with the U.S. Weightlifting Federation that the USOC failed to resolve. His dispute was with the nonmember, the international federation, and it was outside the scope of section 382b.

It is not by accident that the statute does not require the U.S. Olympic Committee to establish machinery for resolving disputes between athletes and nonmembers. See also 36 U.S.C. § 375(a)(5); H.R.Rep. No. 1627, 95th Cong., 2d Sess. 15 (1978), U.S. Code Cong. & Admin. News 1978, p. 7478. The USOC has no control over nonmembers. The International Weightlifting Federation can thumb its collective nose at the U.S. Olympic Committee. It can do more: if the USOC tried to put Michels on the U.S. Olympic Weightlifting team in defiance of the IWF's expulsion, the IWF could ask the International Olympic Committee to disqualify the team. Michels might succeed only in destroying the Olympic hopes of all the American weightlifters.

To resolve disputes, you must have power over the disputants. That is why section 382b confines the USOC's duty of dispute resolution to disputes between athletes and members of the USOC. Even if section 382b could be enforced by a private suit, this suit would have to be dismissed for failure to state a claim.