Brian R. OLDFIELD,
Plaintiff-Appellant,

v.

The ATHLETIC CONGRESS, U.S. Olympic Committee & Don Miller, individually and as Executive Director of the U.S.O.C., James Carnes, individually and as President of the Athletic Congress of the U.S., Ollan C. Cassell, individually and as Executive Director of the Athletic Congress of the U.S., Defendants-Appellees.

No. 84–2814.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 14, 1985.

Decided Dec. 26, 1985.

David S. Shane, Law Office of Melvin M. Belli, Sr., San Francisco, Cal., for plaintiff-appellant.

John J. Hansen, Pillsbury, Madison & Sutro, San Francisco, Cal., for defendants-appellees.

Before SNEED, KENNEDY, and BOOCHEVER, Circuit Judges.

SNEED, Circuit Judge:

This is an appeal from a decision of the district court granting the summary judg-

ment motion of appellees, The Athletic Congress (TAC) and the United States Olympic Committee (USOC), against appellant, Brian Oldfield.

## I.

### FACTS

Brian Oldfield is a world-class athlete in the shot put competition. Shortly after participating in the 1972 Olympics, Oldfield signed a professional performance contract with the International Track Association (ITA)—an act that resulted in the suspension of his amateur status. He competed with the ITA for four years, at which time he sought to reestablish his standing as an amateur.

Oldfield was only partially successful in this attempt. In accordance with a rule of the International Olympic Committee that bars from the Olympic Games athletes who have been "registered as professional ... in any sport," By-laws to Rule 26 of the Olympic Charter, TAC sought to exclude Oldfield from the 1980 Olympic Trials on the ground that his ineligibility to compete in the Games rendered him ineligible to participate in the Trials.

Oldfield initiated an arbitration proceeding to challenge his exclusion, but the arbitrator agreed with TAC's stand on the issue. Oldfield took no further action to challenge the arbitrator's decision. Nonetheless, ultimately he was allowed to compete in the Trials. Presumably, this was because the USOC had withdrawn its entry in the 1980 Summer Games and the so-called "Trials" would not serve to select athletes for the Olympic Team.

In April 1984, Oldfield sent a telegram to TAC inquiring about his eligibility to compete in the 1984 Olympic tryouts. On April 24, 1984, TAC informed Oldfield that he was not eligible because he could not play in the Games under IOC rules. Two days before the Olympic tryouts, on June 13, 1984, Oldfield filed his complaint in this action. Among other things, he claimed that TAC and the USOC were arbitrarily denying him his right to compete, in violation of the Amateur Sports Act of 1978, 36 U.S.C. §§ 371–396 (1982).

On the eve of the competition, the district court denied Oldfield's motion for a temporary restraining order; Oldfield appealed, but this court denied his motion for an injunction pending resolution of the appeal. The parties subsequently stipulated to a dismissal of that appeal, but Oldfield retained his claim for damages. The USOC filed a motion for summary judgment on September 21, 1984, which TAC joined on September 28. The district court summarily granted the motion and Oldfield timely filed this appeal.

## II.

### STANDARD OF REVIEW

The district court's judgment is reviewable de novo. The judgment should be affirmed only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See Poland v. Martin*, 761 F.2d 546, 547 (9th Cir.1985). The judgment below may be affirmed on any ground appearing in the record. *See Veit v. Heckler*, 746 F.2d 508, 510 (9th Cir.1984).

## III.

### DISCUSSION

#### A. *Private Right of Action*

■ The Amateur Sports Act of 1978, 36 U.S.C. §§ 371–396 (1982), was enacted in response to years of rivalry, warfare, and confusion among amateur athletic organizations—a situation that, in Congress's estimation, was impairing the ability of American athletes to compete on the international level. *See* S.Rep. No. 770, 95th Cong., 2d Sess. 2–3 (1978) [hereinafter cited as *Senate Report*]. The Act attacked the problem through structural revision: it created a hierarchical system headed by the USOC, in which the power is vested "to act as the coordinating body for amateur athletic activity." *Id.* at 4. Among its responsibilities under the Act, the USOC is charged with "[providing] for the swift res-

olution of conflicts and disputes involving amateur athletes, national governing bodies, and amateur sports organizations, and [protecting] the opportunity of any amateur athlete ... to participate in amateur athletic competition." 36 U.S.C. § 374(8). It is primarily from this provision that Oldfield seeks to nourish his-claim.

Although Oldfield concedes that no part of the Act explicitly affords athletes a private right of action to enforce this statutory directive, he argues that such a right may fairly be inferred.

In *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), the Supreme Court prescribed the four factors that are relevant in determining whether a statute contains an implied cause of action: (1) whether the plaintiff is a member of a class for whose especial benefit the statute was enacted; (2) whether there is an indication of Congress's intent to create or deny a private remedy; (3) whether a private remedy would be consistent with the statute's underlying purposes; and (4) whether the cause of action traditionally is relegated to state law. *Id.* at 78, 95 S.Ct. at 2087. As more recent Supreme Court cases have made clear, however, the factors enunciated in *Cort* are not entitled to equal weight. "The central inquiry remains whether Congress intended to create, either expressly or by implication, a private cause of action." *Touche Ross & Co. v. Redington*, 442 U.S. 560, 575, 99 S.Ct. 2479, 2488, 61 L.Ed.2d 82 (1979); *accord Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran*, 456 U.S. 353, 377–78, 102 S.Ct. 1825, 1838–39, 72 L.Ed.2d 182 (1982); *Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 15–16, 100 S.Ct. 242, 245–246, 62 L.Ed.2d 146 (1979).

All too frequently the intent of Congress is quite obscure. It is seldom as apparent as it is in the present case. As originally proposed, the Act contained a substantive provision on athletes' rights that granted athletes the power to challenge in federal court the actions of any sports organization that threatened to deny them the right to compete. *See* S. 2036, 94th Cong., 1st Sess.

§ 304(a) (1977); *Michels v. United States Olympic Committee*, 741 F.2d 155, 157–58 (7th Cir.1984). The Senate Report on the final version of the Act discloses, however, that "[t]his provision met with strong resistance by the high school and college communities. Ultimately, the compromise reached was that certain substantive provisions on athletes' rights would be included in the USOC Constitution and not in the bill." *Senate Report* at 6. Should this compromise be construed to indicate Congress's intent to incorporate the USOC Constitution into federal law and thereby empower athletes to litigate in federal court any alleged deprivations of rights created by that document just as if the Senate had retained the provisions of the original bill? We think not. As Judge Posner recently observed, such an approach "would defeat the [legislative] compromise." *Michels*, 741 F.2d at 159 (Posner, J., concurring).

Oldfield narrows his attack and contends that, because the section containing the private right of action was deleted in response to pressure from high school and college organizations, we should infer that Congress intended to eliminate only the private right of action of student athletes. Such a distinction finds no support in the statute: all the provisions in the Act concerning resolution of disputes and conflicts refer to amateur athletes in general. *See* 36 U.S.C. § 374(8) (1982) (charging the USOC with responsibility both for resolving disputes and conflicts involving "amateur athletes" and for protecting the competitive opportunities of "any amateur athlete"); *id.* § 375(a)(5) (granting the USOC the power to facilitate the resolution of conflicts that involve "any of its members and *any amateur athlete*") (emphasis added); *id.* § 382b (directing the USOC to "establish and maintain provisions for the swift and equitable resolution of disputes involving any of its members and relating to the opportunity of *an amateur athlete*" to participate in certain protected competitions) (emphasis added).

Also unpersuasive are Oldfield's references to the legislative history. His quota-

tions are from statements made by sponsors of the Act prior to its revision. Although the statements of a bill's sponsors are normally "to be accorded substantial weight in interpreting the statute," *Federal Energy Administration v. Algonquin SNG, Inc.*, 426 U.S. 548, 564, 96 S.Ct. 2295, 2304, 49 L.Ed.2d 49 (1976), they can carry but little force when flatly contradicted by subsequent legislative action.[1] The same can be said of Oldfield's references to the Final Report of the President's Commission on Olympic Sports.

The absence of an implied private right of action is also suggested by Congress's explicit grant to the USOC of the right to proceed in federal court against infringers of Olympic-related symbols, emblems, trademarks, and names. *See* 36 U.S.C. § 380 (1982). When Congress wished to confer a right of action, it knew how to do so. The presence in the Act of administrative mechanisms for the resolution of disputes over an athlete's right to compete still further betokens the absence of an implied private right. *See, e.g., id.* § 382b (directing the USOC to promulgate procedures for resolving disputes between its members and athletes); *id.* § 395 (prescribing procedures for challenging the actions of national governing bodies for particular sports). In view of these express enforcement provisions, "it is highly improbable that 'Congress absentmindedly forgot to mention an intended private action.'" *Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 20, 100 S.Ct. 242, 247, 62 L.Ed.2d 146 (1979) (quoting *Cannon v. University of Chicago*, 441 U.S. 677, 742, 99 S.Ct. 1946, 1981, 60 L.Ed.2d 560 (1979) (Powell, J., dissenting)).

We hold, therefore, that Oldfield lacks a private right of action under the Amateur Sports Act of 1978. Our conclusion is in accord with the result reached by the Seventh Circuit in *Michels v. United States Olympic Committee*, 741 F.2d 155 (7th Cir. 1984)—the only other court of appeals opinion to address this issue.[2]

Because Oldfield lacks a private right of action under federal law, the district court had no jurisdiction to entertain his claim. We therefore affirm the court's grant of summary judgment.

### B. *Attorney's Fees*

■ Appellees, citing *Reiser v. Del Monte Properties Co.*, 605 F.2d 1135 (9th

---

**1.** The appellant does cite one statement made after the deletion of the athletes' bill of rights that, at first blush, appears to lend some support to his view. During the Senate's consideration of the revised version of the Act, Senator Stevens read into the Congressional Record a speech made by Olympic athlete Anita DeFrantz to the USOC House of Delegates:

> It is clear that the amendments before you ... weaken the current athletes' rights section contained in the USOC constitution. However, it is important to know that the right to seek redress through arbitration and the courts for a denial of the right to compete by a member of the USOC (and in some instances by a non-member) is preserved.

124 Cong.Rec. 12,856 (1978).

It is clear from the context of the passage that the right to seek redress to which Ms. DeFrantz was referring is that contained in Article IX of the USOC Constitution. *See* United States Olympic Committee Const. art. IX. Thus, the most sensible interpretation of her statement is that athletes may have recourse to federal courts to enforce the arbitration awards obtained through the *administrative* procedures mandated by the Amateur Sports Act and detailed in the USOC Constitution. If, to the contrary, Ms. DeFrantz was claiming that the USOC Constitution can itself confer jurisdiction on federal courts, she was plainly mistaken.

**2.** In *DeFrantz v. United States Olympic Committee*, 492 F.Supp. 1181 (D.D.C.), *aff'd without opinion*, 701 F.2d 221 (D.C.Cir.1980), a federal district court considered whether the Amateur Sports Act of 1978 granted athletes a private right of action to challenge the United States Olympic Committee's decision not to send an American team to the 1980 Summer Olympics in Moscow. Although the court found that the Act did not confer such a right, it based this holding largely on its prior determination that the USOC had plenary power to bar the United States' participation in the Games. To find an implied right in such circumstances, the court observed, "[would be] to believe that by its silence Congress intended to confer a cause of action to enforce nonexistent rights." *Id.* at 1192. Although the opinion is narrowly focussed, the court did observe that "to the extent Congress provided protection for amateur athletes to compete, it did so in terms of eliminating the rivalries between sports organizations." *Id.*

Cir.1979), request attorney's fees on this appeal on the ground that "the legal services rendered will confer a benefit on the citizens of the United States as a whole." Appellees' Brief at 7. We deny their request. As *Reiser* makes clear, the "common benefit" exception to the American rule on attorney's fees applies only when three conditions are met: (1) the action confers a substantial benefit on others; (2) the persons benefited constitute an ascertainable class; and (3) the award of attorney's fees operates to shift the costs of litigation to that group. *See id.* at 1139 (citing *Hall v. Cole,* 412 U.S. 1, 5, 93 S.Ct. 1943, 1946, 36 L.Ed.2d 702 (1973), and *Mills v. Electric Auto-Lite Co.,* 396 U.S. 375, 393–94, 90 S.Ct. 616, 626–27, 24 L.Ed.2d 593 (1970)).

The exception is inapplicable to the facts of this case. Its purpose is to fix costs upon those who share the benefits. Assuming the beneficiaries of the result of this action can be identified, assessing fees against Oldfield will not spread the cost of this litigation to them. Oldfield has *not* benefited from this action. To saddle him with the attorney's fees will only increase his losses from this action, not correlate costs with benefits.

Finally, Oldfield's action is not so frivolous as to require the imposition of the burden of paying appellees' attorney's fees.

### IV.

### CONCLUSION

We affirm the district court's grant of summary judgment, but deny the appellees' request for attorney's fees.