Delisa WALTON–FLOYD, Appellant,

v.

The UNITED STATES OLYMPIC COMMITTEE, Appellee.

No. 01–95–001442–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Feb. 26, 1998.

Adam Poncio, Jose L. Garriga, Frank Herrera, San Antonio, for Appellant.

Cliffton Trigg Hutchinson, Stephen B. Schulte, Houston, for Appellee.

Before ANDELL, WILSON and HUTSON–DUNN,* JJ.

## OPINION

ANDELL, Justice.

The appellant appeals a summary judgment granted in favor of the appellee, the United States Olympic Committee (the USOC). We affirm.

## Background

The USOC coordinates the United States's participation in international amateur athletic competitions. It resolves disputes among athletes and sports organizations or between competing sports organizations, and provides uniformity in the area of amateur athletics, thereby protecting the rights of amateur athletes to compete. The USOC has the power to sue and be sued. 36 U.S.C.A. § 375(a)(1), (5), (6) (West 1988).

The USOC selects the United States's governing bodies for every sport in the Olympics and Pan–American games. 36 U.S.C.A. § 375(a)(4) (West 1988). In track and field, the USOC recognizes The Athletic Congress (TAC) as the national governing body. TAC coordinates and conducts track and field competitions to ensure competitions comply with the rules and regulations of the International Amateur Athletic Federation (IAAF). The IAAF rules provide for punishment or suspension of athletes who use certain performance enhancing drugs. The IAAF publishes a list of the banned substances.

The USOC issued the appellant a card listing many of the more common substances on the banned list. The card warns:

This list is not complete. It is the athlete's responsibility to check the status of all medications. **CALL THE USOC HOTLINE 1–800–233–0393.**

The appellant's husband, who was also her trainer, obtained a box of Sydnocarb. He testified the box appeared to be labeled in Russian, he could not read the writing, and he did not have it translated. The box had no instructions and did not list ingredients.

The appellant's husband testified that he called the USOC hotline to inquire about Sydnocarb's status and that the USOC operator told him Sydnocarb was a carbohydrate supplement not on the banned list. He admitted, however, that the hotline operator did not specifically tell him that Sydnocarb was safe to use, nor did she give any other assurances. The appellant called the hotline, with similar results, then began using Sydnocarb. She and her husband testified they called the hotline on subsequent occasions to inquire about the status of Sydnocarb, and that each time, the USOC's operator told them it was not on the banned list.

After the appellant's semi-final heat at the IAAF World Championships, she provided meet officials with a urine sample, which they divided into two samples. The first sample tested positive for amphetamines, a prohibited substance. IAAF officials told her the test results and invited her to attend a testing of the second sample, which also tested positive for amphetamines. The IAAF relayed the results to TAC, which suspended her from further competition. The appellant eventually discovered that Sydnocarb was the apparent source of the amphetamines.

The appellant alleges the following USOC acts and omissions were negligent:

(a) providing her with erroneous and false information through the hotline;

(b) not properly informing and warning her of the possible effect of ingesting Sydnocarb;

(c) not advising her that the use of Sydnocarb would result in the failure of the IAAF drug test;

(d) providing her with information that Sydnocarb was a carbohydrate supplement and not a substance on the banned list;

(e) not informing and educating its hotline personnel concerning Sydnocarb and the risk involved in using it;

(f) not keeping its list of banned substances up to date to include Sydnocarb

---

* The Honorable D. Camille Hutson–Dunn, retired Justice, Court of Appeals, First District of Texas at Houston, sitting by assignment.

despite actual knowledge and industry knowledge concerning Sydnocarb and the fact that it represented an amphetamine derivative;

(g) not testing or researching Sydnocarb despite calls from athletes inquiring whether the drug could be used; and

(h) not maintaining a system that would accurately identify the composition of drugs brought to its attention by athletes inquiring through the hotline.

Furthermore, she alleges the USOC negligently breached various duties prescribed by the Amateur Sports Act of 1978 (the Act). 36 U.S.C.A. §§ 371–396, 392(a)(3), (5), (6), (8), (9) (West 1988). She also alleges that the USOC owed her a duty, because the USOC represented itself as an expert in the field of illegal substances, instructed athletes to use its hotline to obtain information on those substances, provided her with inaccurate information, and intentionally or negligently misled her regarding the risk of taking Sydnocarb.

In response, the USOC moved for summary judgment based on the following grounds:

(1) the Act does not permit a private cause of action for damages, and it does not create any legal duties to prevent an athlete from experimenting with drugs; therefore, federal law precludes such actions;

(2) because there is no evidence that the USOC possessed a pecuniary interest in the hotline, the appellant's cause of action for negligent misrepresentation is barred;

(3) under Texas law, the USOC's status as a charitable organization limits damages;

(4) there is no evidence of malice supporting the appellant's claim for punitive damages.

The appellant replied that: (1) the Act creates an implied cause of action for damages, and even absent such a private right of action in the Act, one who voluntarily undertakes an affirmative course of action for the benefit of another owes a duty of reasonable care; and (2) a negligent misrepresentation claim does not require a pecuniary interest if the defendant conveys the information in the course of business. The court granted the USOC's motion.

## Standard of Review

Summary judgment is proper only when a movant establishes that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. *Randall's Food Mkts., Inc. v. Johnson,* 891 S.W.2d 640, 644 (Tex.1995); *Bangert v. Baylor College of Medicine,* 881 S.W.2d 564, 566 (Tex.App.—Houston [1st Dist.] 1994, writ denied). In reviewing the summary judgment, we must indulge every reasonable inference in favor of the nonmovant and resolve any doubts in its favor. *Johnson,* 891 S.W.2d at 644; *Marchal v. Webb,* 859 S.W.2d 408, 412 (Tex.App.—Houston [1st Dist.] 1993, writ denied). In reviewing a grant of summary judgment, this Court will take all evidence favorable to the nonmovant as true. *Johnson,* 891 S.W.2d at 644; *Bangert,* 881 S.W.2d at 565.

## Discussion

We are asked to determine whether the USOC owed the appellant a federal statutory or Texas common-law duty. In seven points of error, the appellant asserts: (1) the USOC owed her a federal statutory and Texas common-law duty; (2) there are fact issues whether the USOC had breached those duties; (3) fact issues exist whether damages can be limited; and (4) fact issues exist whether the USOC was grossly negligent.

### *Private Right of Action Under the Amateur Sports Act*

The appellant maintains the Act provides for an implied private cause of action for monetary damages when the USOC fails to comply with the duties imposed by Congress. She further maintains that Congress would not have included a specific provision allowing the USOC to be sued if it did not intend to create a private cause of action. 36 U.S.C.A. § 375(a)(6) (West 1988). The USOC argues the Act's legislative history, underlying purposes, and caselaw contravene the appellant's interpretation.

The United States Supreme Court prescribes four factors to consider in finding an implied cause of action: (1) whether the plaintiff is a member of a class for whose special benefit the statute was enacted; (2) whether there is an indication of Congressional intent to create or deny a private remedy; (3) whether a private remedy would be consistent with the statute's underlying purposes; and (4) whether the cause of action traditionally is relegated to state law. *Cort v. Ash*, 422 U.S. 66, 79, 95 S.Ct. 2080, 2088, 45 L.Ed.2d 26 (1975). The factors need not be equal in weight, and the central inquiry remains whether Congress intended to create, either expressly or by implication, a private cause of action. *Touche Ross & Co. v. Redington*, 442 U.S. 560, 576, 99 S.Ct. 2479, 2489, 61 L.Ed.2d 82 (1979); *accord Merrill Lynch, Pierce, Fenner, & Smith v. Curran*, 456 U.S. 353, 377–78, 102 S.Ct. 1825, 1838–39, 72 L.Ed.2d 182 (1982); *Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 15–16, 100 S.Ct. 242, 245–46, 62 L.Ed.2d 146 (1979). Once Congressional intent is determined, there is no need to work through all four of the *Cort* factors. *Merrill Lynch*, 456 U.S. at 388, 102 S.Ct. at 1844.

Because no Texas court has considered this issue, we turn to federal cases for guidance. Federal courts have interpreted the Act and its legislative history not to imply private causes of action against the USOC.[1] *Oldfield v. The Athletic Congress*, 779 F.2d 505, 506–08 (9th Cir.1985); *Michels v. United States Olympic Committee*, 741 F.2d 155, 157–58 (7th Cir.1984); *DeFrantz v. United States Olympic Committee*, 492 F.Supp. 1181, 1190–92 (D.D.C.1980); *Martinez v. United States Olympic Committee*, 802 F.2d 1275, 1281 (10th Cir.1986).

In analyzing the Act's legislative history, the courts have looked to four factors to determine Congress did not intend a private cause of action:

1) The Act strongly favors athletes resolving their disputes through the internal mechanisms provided by the USOC rather than the judicial system.

2) The Act expressly provides causes of actions for certain violations set out within the Act.

3) The USOC's Constitution, which is not part of the Act and was not approved by Congress, establishes the right to a private cause of action against the USOC.

4) The original Act was designed to settle disputes between organizations seeking recognition as national governing bodies for a particular sport and to shield amateur athletes from suffering harm because of internal conflicts. When rechartered in 1978, the Act added internal grievance procedures for athletes.

In *Oldfield*, TAC denied a shot putter's attempt to reestablish amateur status four years after he signed a professional contract. 779 F.2d at 506. Because of his professional status, TAC deemed Oldfield ineligible to compete in the Olympic Trials. *Id.* Oldfield brought suit for an injunction and damages against TAC and the USOC, alleging the two organizations had arbitrarily denied him the right to compete in violation of the Act. *Id.* While the plaintiff conceded no express right existed, he contended that an inferred right allowing a private cause of action existed. *Id.* at 507.

The Ninth Circuit denied Oldfield's motion for injunctive relief, but the court did not

---

1. Actions against the USOC have proven successful in two scenarios: (1) disputes between organizations and the USOC, *United States Wrestling Fed'n v. Wrestling Division of the AAU, Inc.*, 545 F.Supp. 1053, 1061 (N.D.Ohio 1982); Edward E. Hollis, III, Note, *The United States Olympic Committee and the Suspension of Athletes: Reforming Grievance Procedures Under the Amateur Sports Act of 1978*, 71 Ind.L.J. 183, 188; and (2) breach of contract allegations. *Harding v. United States Figure Skating Ass'n*, 851 F.Supp. 1476, 1480 (D.Or.1994); *Reynolds v. International Amateur Athletic Fed'n*, 841 F.Supp. 1444, 1448 (S.D.Ohio 1992).

Intervention is appropriate only in the most extraordinary circumstances, where the association has clearly breached its own rules, the breach will imminently result in serious and irreparable harm to the plaintiff, and the plaintiff has exhausted all internal remedies. *Harding*, 851 F.Supp. at 1479. As a general rule, courts should not intervene in the merits of the underlying dispute, but if they do, then they should limit injunctive relief to correcting the breach of the rules. *Id.*

enjoin his damages claim. *Id.* at 506. However, the district court granted summary judgment on the damages claim, and the Ninth Circuit affirmed. *Id.* at 508.

The Ninth Circuit noted that the Act, as originally proposed, contained a provision referred to as the "Amateur Athletes' Bill of Rights," which expressly granted athletes the power to contest in federal court the actions of any sports organization that threatened to deny them the opportunity to participate. *See* S. 2036, 94th Cong. § 304(a) (1977); *Oldfield,* 779 F.2d at 507. The final version of the Act excluded the provision allowing athletes to sue in federal court and inserted it in the USOC's Constitution. *Oldfield,* 779 F.2d at 507. The court in *Oldfield* explained that the USOC's Constitution is not part of the Act, and thus, the provision did not allow private individuals to litigate in federal court. *Id.*

In *Michels,* the International Weightlifting Federation (IWF) suspended a weightlifter for two years because drug test results revealed an impermissible testosterone level. 741 F.2d at 156. The plaintiff brought suit against the IWF, the U.S. Weightlifting Federation, and the USOC, contending the USOC violated the Act. The plaintiff claimed the test results were invalid and he had a right to a hearing on the matter. *Id.* Based on the Act's legislative history, the Seventh Circuit held that the Act contained no private right of action to require the USOC to hold a hearing. The court noted that Congress's refusal to insert the bill of rights provision into the final version indicates that it considered and then rejected a cause of action for athletes to enforce the Act's provisions. *Id.* at 158. In concurrence, Judge Richard Posner suggested that in light of the Act's provisions to resolve disputes internally, the USOC is better equipped to handle disputes involving athletes. *Id.* He continued, "There can be few less suitable bodies than the federal courts for determining the eligibility, or the procedures for determining eligibility, of athletes to participate in the Olympic Games." *Id.*

The court in *DeFrantz* considered the case of 25 athletes and one executive member of the USOC who sought an injunction prohibit-ing the USOC from implementing USOC's House of Delegates' resolution to decline an invitation to 1980 Moscow Summer Olympics. 492 F.Supp. at 1183. The Court held the Act did not confer an enforceable right to an amateur athlete to compete in Olympic competition as the Act confers the broad authority to the USOC to make all decisions regarding competitions and participation. *Id.* at 1188. Furthermore, even if such a right to compete existed, the court noted that the Act does not imply a private cause of action to enforce such a right. *Id.* at 1192. The court noted that the Act sought to protect the opportunity for athletes to compete and prevent rivalries between sports organizations. *Id.* The court looked to 36 U.S.C. § 395 (1988) and found established procedures for the internal consideration and resolution of jurisdictional and eligibility issues. *Id.* The court also cited 36 U.S.C. § 395(c)(1), which grants any aggrieved party the right to review by arbitration after exhaustion of other USOC remedies, as confirming the Act's intent to handle disputes internally. *Id.*

Finally, in *Martinez,* a personal representative of the estate of an amateur boxer, who died from injuries sustained in a boxing tournament, filed a wrongful death action against the USOC and other various organizations responsible for the event. 802 F.2d at 1275. The Tenth Circuit, relying on the analysis of the Act's legislative history in *DeFrantz,* dismissed the suit for failure to state a federal cause of action. *Id.* at 1281. The Court found no indication in the Act that Congress intended the USOC to be liable to athletes injured while competing in events not fully controlled by the USOC. *Id.*

The appellant attempts to distinguish the above cases on the basis of the remedy sought by the plaintiff and scope of USOC control of the events. First, the appellant asserts that, with the exception of *Martinez,* all the cases cited by the USOC stand only for the proposition that Congress did not intend to create an implied right of action in favor of an athlete *to enjoin* the USOC or one of the National governing bodies from restricting that athlete's right to participate in amateur sporting events. The appellant argues that she seeks damages, not partic-

ipation. The appellant does not present any cases in support of her position; instead, she directs the Court's attention to certain alleged duties conferred upon the USOC by the Act and to the fact that the USOC may be sued.

To permit the appellant to bring forth a private claim for damages would directly contravene *Oldfield*, wherein the Ninth Circuit expressly denied the plaintiff a cause of action for his damages claim. The legislative history of the Act indicates that Congress did not intend to provide individual athletes a private cause of action. If Congress had so intended, then it would not have removed the bill of rights from the original version of the Act. Moreover, if Congress desired to differentiate between monetary claims and injunctions, then it could have so provided in the Act. Congress promulgated the Act, including its emphasis on internal dispute mechanisms, and has expressly reserved the right to amend it. *See* 36 U.S.C.A. § 382 (West 1988).

Though the court in *Martinez* rejected an implied right of action for damages, the appellant contends that the court limited its holding to "athletes injured while competing in events that were *not fully controlled* by the USOC." *Martinez*, 802 F.2d at 1281 (emphasis added). Though the court alludes to the notion of control in disposing of this case, the court does not indicate control is a determining factor in claims seeking damages. Moreover, the courts neither make the issue of control into a determining factor in *Oldfield*, where the plaintiff sought damages, nor in the other aforementioned cases, where the USOC exercised complete control. The judiciary's silence in no way produces an inference that plaintiffs injured while competing in events not within exclusive USOC control maintain a private cause of action.

### Voluntary Assumption of a Duty Under State Law

■ The appellant argues the Act imposes a duty upon the USOC or a duty exists through voluntary assumption of the hotline service. Since we have held there is no private cause of action under the Act, we must determine whether the USOC assumed a duty under state tort law. The appellant maintains that even absent a statutory duty under the Act, the USOC voluntarily undertook an affirmative course of action for her benefit. She asserts the USOC assumed the obligation to exercise reasonable care. The USOC claims it does not owe the appellant any duty under Texas tort law, because: (1) statutory goals and objectives cannot form the basis of a common law negligence action; (2) the USOC did not voluntarily assume a duty to the appellant; and (3) the Act preempts any common-law negligence action.

In determining whether a private cause of action existed under state tort law, the Appellate Division of the New Jersey Superior Court felt bound to follow federal case law. *Dolan v. U.S. Equestrian Team, Inc.*, 257 N.J.Super. 314, 608 A.2d 434, 437 (App.Div. 1992). The court noted:

> [W]e believe the Act should be uniformly interpreted; that it would be inappropriate to attribute different or unique meanings to its provisions in New Jersey and thus create a jurisdictional sanctuary from the Congressional determination that these types of disputes should be resolved outside the judicial process.

*Id.* 608 A.2d at 437.

We agree with *Dolan*. The interest of maintaining consistent interpretations among jurisdictions requires the Act to pre-empt claims asserted under state tort law. To hold a common law duty exists outside the scope of the Act, thereby enabling an individual athlete to bring suit, threatens to override legislative intent and opens the door to inconsistent interpretations of the Act.

We hold that the USOC did not owe the appellant a duty under any of the theories pleaded. Accordingly, we overrule points of error one, two, three, and four, making it unnecessary to address points of error five through seven.

We affirm.