Jessica K. FOSCHI, by Robert J. FOSCHI her Father, Plaintiff,

v.

UNITED STATES SWIMMING, INC., United States Olympic Committee, Defendants.

No. 96 CV 636 (ADS).

United States District Court, E.D. New York.

Feb. 29, 1996.

Williams & Connolly by Mark S. Levinstein, David Kiernan, Jonathan Banks, Washington DC, for plaintiff.

Meyer, Suozzi, English & Klein, P.C. by Kenneth L. Gartner, Jeffrey G. Stark, Mineola, New York, for plaintiff.

London Fischer by James L. Fischer, New York City, for United States Swimming, Inc.

McLaughlin & Stern, LLP. by Peter Alcalay, New York City, for United States Olympic Committee.

## MEMORANDUM OF DECISIONS AND ORDER

SPATT, District Judge.

This case arises out of the claims of the plaintiff Jessica Foschi ("Foschi" or the "plaintiff") that she was wrongfully suspended from swimming competitively for two years by the defendants, United States Swimming, Inc. ("USS") and United States Olympic Committee ("USOC" collectively the "defendants) as the result of her failing a drug test. Foschi alleges three claims for "breach of contractual due process" and seeks declaratory and injunctive relief preventing the defendants from suspending her from competition. This case was originally filed in New York State Supreme Court, Nassau County on February 2, 1996. The defendants removed the matter to this Court pursuant to 28 U.S.C. § 1441 on February 14, 1996. Presently before the Court is the plaintiff's motion to remand this case back to the state court.

I. *The facts*

A. *Background*

The following facts are taken from the Amended Complaint. The plaintiff is a member of the United States National "B" Swim Team who has qualified to compete in the United States Olympic Trials for Swimming in five swimming events. She resides with her parents in Old Brookville, New York. Foschi is also a member of the USS. The USS is a corporation organized under the laws of the State of Ohio which regulates the conduct and administration of swimming and swimming events in New York and throughout the country. The USS is a member of the USOC, which is a corporation established by federal law, incorporated in 1950 by an act of Congress. The USOC is the "coordinating body" for amateur athletic activity in the United States and is the ultimate authority with respect to United States representation in the Olympic Games. According to the Amended Complaint, the "USOC is required to use all lawful means at its disposal to protect the right of Jessica . . . to attempt to qualify for selection to participate as an athlete . . . in the [1996] Olympic Games."

The USOC also performs drug testing on behalf of the USS. In August 1995, Foschi competed at the Phillips 66 United States National Swimming Championships. On August 4, 1995, she was required to submit to a drug test after she finished third in the 1500 meter freestyle event. As mandated by the USOC's Policies and Procedures, the urine sample was collected and placed into two separate containers labelled "A" and "B." Sample B was to be tested only if sample A tested positive.

On August 9, 1995, Foschi's father was advised by Ray Essick ("Essick"), the Executive Director of the USS that his daughter's urine sample A tested positive for the presence of a metabolite of mesterolone, a steroid not approved for sale in the United States.

On August 10, 1995, Foschi and her parents requested that another urine sample be taken at their expense at the USOC collection station or any other place designated by the USS in order to establish that a mistake had occurred. USS representatives took Foschi to the testing station but USOC personnel refused to take another sample. On August 11, 1995, the Foschis were advised that sample B also tested positive for a metabolite of mesterolone. On August 14, 1995, the Foschis had a another sample taken at the Brunswick Toxicology Laboratory in Am-

ityville, New York. The sample was sent to the SmithKline Beecham laboratory in Atlanta, the laboratory selected to conduct the testing for the 1996 Olympic Games. The result of this test was negative.

The Foschis subsequently began to prepare for a hearing before the USS National Board of Review ("National Board") which would determine what sanction would be appropriate. While attempting to ready themselves for the hearing, they sought to obtain the documents necessary to their defense and a retesting of the August 5, 1995 urine samples. However, the documents requested were not provided until immediately before the hearing and were incomplete, and the request for a retesting of the urine samples was denied.

In a letter dated September 7, 1995, the Foschis were informed that they should submit any mitigating evidence, including character testimony, by September 25, 1995. The USS also sent a copy of the Federation Internationale de Natation Amateur ("FINA") Medical Rules and Doping Control Guidelines, which the USS is required to follow under its own rules. According to the Amended Complaint, these rules require that at a hearing following an alleged positive drug test, the National Board "should take into consideration the circumstances and the known facts of the case." *See* FINA Medical Rules 4.17.3; FINA Doping Control Guidelines § 7.2. The FINA Doping Control Guidelines further provide that athletes attending their hearings should give their explanation of why the test results were positive. In addition, while the Doping Guidelines recognize that many reasons are "unlikely" to be accepted, they do not preclude consideration of any explanation.

On September 19, 1995, upon the advice of the laboratory director who tested Foschi's urine for the USS, Foschi was given a thorough medical examination for symptoms which usually coincide with the use of anabolic steroids. According to the examination, there was no evidence which would indicate any past or present use of drugs. Moreover, the Foschis arranged to have themselves and Jessica's coach take a polygraph examination to determine if any of them had any knowl-edge of Jessica taking steroids or why the laboratory results might have been positive. Again the results were in Foschi's favor. On September 27, 1995, the Foschis provided the National Board with "a substantial volume" of documentary evidence supporting Jessica's defense.

### B. *The USS National Board of Review hearing and decision*

On October 30, 1995, the National Board conducted its hearing on this matter. The review panel consisted of three members, two of whom, according to the plaintiff, admitted that they did not feel they should have served because of their outspoken views regarding performance enhancing drugs and their position that a first time offender should be banned from competition for life.

At the hearing, the laboratory director responsible for testing the August 5, 1995 samples testified without advance notice to the Foschis that the test results were correct and that the laboratory never made errors. However, the director's testimony also revealed that the laboratory violated a number of FINA rules which, as stated above, the USS is obligated to comply with. As an example of the rules which the laboratory failed to obey, the Amended Complaint cites FINA Medical Rules 4.15–4.15.5 and FINA Guidelines for Doping Control 6.4, providing that when testing sample B those individuals "involved must indicate by their signatures that all procedures have been followed according to FINA rules."

After the hearing, the National Board concluded that "Jessica Foschi had no knowledge of the manner in which the banned substance entered her body. It is the opinion of the majority of the National Board ... that the banned substance was either given to Jessica without her knowledge or that she was the victim of sabotage." As a result of these mitigating circumstances the National Board held that rather than suspend Foschi, she should be placed on probation for two years and subjected to mandatory out-of-competition drug testing with a lifetime ban to follow if she tests positive in the future.

#### C. The appeals to the USS Board of Directors

On November 7, 1995, the president of the USS appealed the decision of the National Board to the USS Board of Directors ("Board of Directors"). The president contended that the National Board had no discretion to consider the plaintiff's lack of culpability in taking a banned substance, and therefore, she should have been banned from competition for two years. Foschi refers to this position as the rule of "absolute liability."

On December 1, 1995, Foschi filed her own appeal claiming that she was denied a fair hearing before the National Board "as a result of violations by USS of applicable rules of FINA relating to doping control, USS Rules and Regulations and the USOC Constitution[,] ... By–Laws and rules." Although each specific violation is not contained in the Amended Complaint, the plaintiff alleges that the list of violations was set forth in the appeal to the Board of Directors.

#### D. The hearing before the Board of Directors

From the allegations contained in the Amended Complaint, it appears as though the focus of the appeal was whether the rule of "absolute liability," favored by the USS officers, should be applied. According to the plaintiff however, a two step analysis is required.

As stated above, FINA's Medical Rules and Doping Control Guidelines provide for "a fair hearing ... to the competitor" after an alleged positive drug test and that the hearing "should take into consideration the circumstances and the known facts of the case." FINA Medical Rules 4.17.3; FINA Doping Control Guidelines § 7.2. The FINA Doping Control Guidelines further provide that athletes attending their hearings may explain why their test results were positive. While the Doping Guidelines recognize that many reasons are "unlikely" to be accepted, they do not preclude consideration of any explanation.

Applying these rules, the plaintiff reasoned that requiring the Board of Directors to con-sider all facts and circumstances means that the rules anticipated that some exceptional circumstances would result in less severe sanctions or no sanctions at all. Accordingly, an initial positive drug test creates only a presumption of a doping violation. The athlete may rebut this presumption by establishing circumstances which would militate in her favor. If the presumption is not rebutted, then sanctions are appropriate. Under the second tier of this analysis, if sanctions are imposed, the Board may modify the penalty when necessary.

The Board of Directors accepted the plaintiff's analysis and rejected the rule of absolute liability:

> [U]nder FINA MED Rule 4 a positive urine test for an anabolic steroid creates a presumption of doping. Under FINA MED 4.17.3 regarding sanctions, the athlete has the right to present evidence to rebut this presumption, and the Board may modify the sanctions provided in FINA MED 4.17.4.1

In spite of this articulation of the standard, which was propounded by the plaintiff, Foschi contends that the sanction applied, two years suspension, was inappropriate and constituted a breach of contract for the following reasons:

1. The USS and USOC did not allow for a meaningful challenge to the positive drug test. Therefore the hearings that followed were unfair.

2. Although the correct standard was articulated at the hearing before the National Board, the absolute liability standard was actually applied in violation of the defendants' contractual due process obligations.

3. The Board of Directors violated its contractual obligations by conspiring to apply the absolute liability standard.

4. The Board of Directors violated its own rules by failing to consider all the known facts and circumstances in deciding what sanction to impose.

5. Applying the standards espoused by the National Board and the Board of Directors, Foschi should not have re-

ceived the maximum penalty of two years suspension for this first offense.

6.  The Board of Directors breached the plaintiff's "contractual due process rights" by refusing to permit retesting of the original urine sample and violated the International Olympic Committee Medical Code which requires retention of urine specimens so that they will be available for retesting. *See* 1995 IOC Medical Code, App. D § 1.4.

In addition to disputing the imposition of the two year suspension, the plaintiff alleges that the hearing before the Board of Directors was fundamentally unfair for the following reasons:

1.  The hearing "failed to comport with the requirements of due process as many Board members had prejudged the case."

2.  Foschi was forced to respond to an "erroneous proposed interpretation of the rule advocated by the officers of USS who were appealing."

3.  The plaintiff was not afforded sufficient time to put on her case.

4.  Prior FINA decisions were introduced improperly and Foschi was not permitted sufficient time to respond or cross examine.

5.  Essential information was withheld by the USS.

6.  The members of the Board of Directors have ongoing personal and professional relationships with the appealing members of the USS.

Based on these allegations, the plaintiff filed her Amended Complaint alleging three causes of action for "breach of contractual due process." The first claim seeks declaratory and injunctive relief against the USS and alleges that Foschi's contractual "due process" rights were violated. Specifically, the plaintiff alleges that the USS "violated its own rules ... [by] applying an absolute liability standard," and failed to consider "all of the known facts and circumstances in deciding what sanction, if any, to impose upon the plaintiff," "thereby depriving [her] of due process and breaching [its] contractual obligations to her."

The second cause of action is also for declaratory and injunctive relief against the USS. This second claim alleges that the plaintiff's "due process" rights were violated by the following conduct: the Board members had prejudged the case; the plaintiff was forced to spend most of the hearing responding to an erroneous interpretation of the relevant rules; there was insufficient time to have important witnesses testify; evidence of prior decisions was introduced without giving the plaintiff a meaningful opportunity to respond; information was withheld prior to the hearing; the Board members had ongoing professional and personal relationships with the officers who were appealing the case; and the defendants refused to properly document the positive test result or permit a retesting.

The final cause of action seeks injunctive relief against the USS and USOC. Foschi contends that the positive test result was a function of scientific error, either because the sample used was not hers or because the sample did not contain the metabolite of a banned substance as previously determined. The USOC breached its obligations to the plaintiff because it failed to comply with the terms of its constitution and by-laws which require that competitors be afforded due process before being deprived of their ability to compete. The suspension issued by the USS violates its "due process" and "other contractual obligations" because the residual specimens have not been provided for retesting.

Based on these causes of action, the plaintiff seeks a declaratory judgment against the defendants providing that it would be unlawful and a breach of the defendant's due process and contract rights for the USS to suspend her or take any other adverse action based on the February 13, 1996 decision of the Board of Directors. Foschi further seeks to enjoin the defendants from taking any action or imposing any sanction against her by preventing her from swimming or interfering with her participation in amateur swimming competitions.

## II.  *The plaintiff's motion to remand*

As stated above, on February 2, 1996 the plaintiff filed her original complaint in the

New York Supreme Court, Nassau County. On February 14, 1996, the defendants removed the case pursuant to 28 U.S.C. § 1441 reasoning that the federal court had both federal question and diversity of citizenship jurisdiction. *See* 28 U.S.C. §§ 1331, 1332. On February 14, 1996, the plaintiff filed her First Amended Complaint accompanied by a motion brought by order to show cause to remand this case back to the state court.

■■■ "A civil action filed in state court may be removed by the defendant to federal district court if the district court has original subject matter jurisdiction over the plaintiff's claim." *Lupo v. Human Affairs Int'l, Inc.,* 28 F.3d 269, 271 (2d Cir.1994). Subject matter jurisdiction may be based on a federal question, *see* 28 U.S.C. § 1331, or diversity of citizenship. *See* 28 U.S.C. § 1332. However, removal statutes are to be strictly construed and the burden of establishing that a case falls within the Court's removal jurisdiction falls upon the removing party, in this case the defendants. *Boyer v. Snap-on Tools Corp.,* 913 F.2d 108, 111 (2d Cir.1990), *cert. denied,* 498 U.S. 1085, 111 S.Ct. 959, 112 L.Ed.2d 1046 (1991); *Greenfield v. National Westminster Bank USA,* 846 F.Supp. 302, 304 (S.D.N.Y.1994); *see also Burns v. Windsor Ins. Co.,* 31 F.3d 1092, 1095 (11th Cir. 1994) ("removal statutes are construed narrowly; where plaintiff and defendant clash about jurisdiction, uncertainties are resolved in favor of remand").

The defendants removed this case to federal court based on both the court's federal question and diversity of citizenship subject matter jurisdiction. The Court will address each basis of jurisdiction separately.

## A. *Federal question jurisdiction*

■■■ Pursuant to 28 U.S.C. § 1331, the district courts have original jurisdiction over "all civil actions arising under the Constitution, laws or treaties of the United States." Where the defendants' attempt to remove a case is predicated upon federal question jurisdiction, the "well-pleaded complaint rule" governs. *Caterpillar Inc. v. Williams,* 482 U.S. 386, 392, 107 S.Ct. 2425, 2429, 96 L.Ed.2d 318 (1987), citing, *Gully v. First National Bank,* 299 U.S. 109, 112–13, 57

S.Ct. 96, 97–98, 81 L.Ed. 70 (1936). Moreover, where there may be both federal and state law claims available, the plaintiff is free to ignore his federal claims in favor of his state claims, which he is free to pursue in state court. *Derrico v. Sheehan Emergency Hosp.,* 844 F.2d 22, 27 (2d Cir.1988) ("[I]t is well settled that a plaintiff as 'master of the complaint' may preclude removal by electing to disregard an available federal dimension of a claim and assert only a distinct state law cause of action."); *Travelers Indem. Co. v. Sarkisian,* 794 F.2d 754, 758 (2d Cir.), *cert. denied,* 479 U.S. 885, 107 S.Ct. 277, 93 L.Ed.2d 253 (1986) ("It has been the law for decades that the party who brings a suit is master to decide what law he will rely upon.") (internal quotation omitted); *Reed v. Cohen,* 876 F.Supp. 25, 27 (E.D.N.Y.1995) ("the plaintiff is the master of the claim; he or she may avoid federal jurisdiction by the exclusive reliance on state law") (internal quotation omitted).

■■■ This is not to say that the Court is bound by the plaintiff's characterization of her own claims. *Greenfield,* 846 F.Supp. at 305. Where a complaint initially appears to be grounded in state law but is actually "federal in nature" and "disguised by the plaintiff's artful pleading," the case may still be removed. *In re Agent Orange Product Liability Litigation,* 996 F.2d 1425, 1430 (2d Cir.1993), citing, 14A Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3722 (2d ed. 1985); *Reed,* 876 F.Supp. at 28, citing, *Sarkisian,* 794 F.2d at 758.

■■■ The plaintiff contends that she has not stated a federal cause of action. Rather, she contends that she asserts three claims for "breach of a contractual relationship." In support of her position, Foschi cites *Harding v. United States Figure Skating Ass'n,* 851 F.Supp. 1476 (D.Or.1994), *vacated on other grounds,* 879 F.Supp. 1053 (D.Or.1995). In *Harding,* a breach of contract case similar to the one presently before the Court, the federal district court enjoined the U.S. Skating Association from proceeding with a disciplinary hearing against the plaintiff because the defendant violated its own by-laws by setting

the hearing so early as to prevent the plaintiff from adequately preparing her defense. In ruling on the defendant's motion for reconsideration of the injunction, the Court rejected the defendant's contention that the court lacked subject matter jurisdiction over the case. The plaintiff filed the suit in state court alleging a breach of contract. Therefore, because the parties were diverse and the amount in controversy exceeded $50,000, the court had diversity jurisdiction. *Id.* at 1480–81.

On the other hand, the defendants contend that the plaintiff's claims arise under the Amateur Sports Act of 1978 (the "ASA"). 36 U.S.C. §§ 371–396. Indeed the plaintiff's original complaint is replete with references to the ASA. According to the defendants, the only reason those references were deleted is so that Foschi may have this case remanded to a "friendly state forum." Nevertheless, "the claim of a violation of the Amateur Sports Act of 1978 still pervades the First Amended Complaint despite its semantic differences from the initial complaint. In support of their position, the defendants contend that the substance of the claims contained in the original complaint have not been modified. She still claims that she was denied a swift and equitable resolution of her claims as required both by the USOC Constitution and the ASA, 36 U.S.C. § 382b.

Foschi rebuts this argument by recognizing that she would be unable to assert a private cause of action under the ASA. *See Martinez v. United States Olympic Comm.,* 802 F.2d 1275, 1280–81 (10th Cir.1986) (recognizing that the ASA does not provide for a private cause of action); *Oldfield v. Athletic Congress,* 779 F.2d 505, 508 (9th Cir.1985) (same); *Michels v. United States Olympic Comm.,* 741 F.2d 155, 157–58 (7th Cir.1984).

The defendants suggest that this reasoning is nothing more than a legal slight of hand because it does not matter whether the plaintiff's cause of action is valid under the ASA for the purposes of determining jurisdiction. Rather, the critical inquiry is whether the plaintiff's claims arise under the Act at all. If they do, then this Court has jurisdiction to determine their validity on the merits.

After reviewing the parties' contentions however, and in view of the dearth of case on law on the subject, the Court must undertake its own analysis. The primary purpose of the Amateur Sports Act of 1978 is to allow the USOC to become coordinating body for amateur sports in the United States which relates to international athletic competition and to provide a mechanism for resolving disputes among various sports organizations and athletes. *See* H.R.Rep. No. 1627, 95th Cong.2d Sess. (1978), reprinted in 1978 U.S.S.C.A.N. 7478, 7481. Included in this overarching mission is the objective to "provide for the swift resolution of conflicts and disputes involving amateur athletes, national governing bodies [such as the USS] and amateur sports organizations, and [to] protect the opportunity of any amateur athlete ... to participate in amateur athletic competition." 36 U.S.C. § 374(8). Consistent with these purposes, the USOC is empowered to "facilitate, through orderly and effective administrative procedures, the resolution of conflicts or disputes which involve any of its members [such as the USS] and any amateur athlete." 36 U.S.C. § 375(a)(5). Accordingly, the USOC is required to establish "[i]n its constitution and bylaws ... for the swift and equitable resolution of disputes involving and of its members and relating to the opportunity of an amateur athlete ... to participate in the Olympic Games ... or other such protected competition as defined in [its] constitution and bylaws." 36 U.S.C. § 382b.

To be eligible for recognition as a National Governing Body ("NGB") by the USOC, an amateur sports organization, such as the USS, must agree to arbitrate, upon demand of the USOC, any controversy regarding the opportunity of an amateur athlete as required by the USOC's constitution and bylaws. 36 U.S.C. § 391(b)(3). Further, the NGB must provide an amateur athlete with "fair notice and opportunity to for a hearing ... before declaring such individual ineligible to participate [in competition]. 36 U.S.C. § 391(b)(6). Such dispute resolution mechanisms must include "procedures for the prompt and equitable resolution of grievances of its members." 36 U.S.C. § 391(b)(11). Finally, the ASA provides that

when an amateur athlete seeks to compel the NGB to comply with the eligibility requirements under the Act he or she must exhaust her available administrative remedies within the NGB. 36 U.S.C. § 395(a)(1). If all administrative remedies have been exhausted, then the USOC "shall hold a hearing to receive testimony for the purpose of determining [whether the NGB] is in compliance with the [above stated eligibility] requirements." 36 U.S.C. § 395(a)(3)(A).

The USOC constitution largely mirrors the requirements of the ASA. For example, Article VIII, section 1 governing "Complaints against a National Governing Body" echoes the language of 36 U.S.C. § 395(a) governing written complaints and exhaustion of remedies. Article VII, governing the rights and duties of member national governing bodies repeats the language contained at 36 U.S.C. § 392. Article III, section 1, governing "Powers and Jurisdiction," contains the same provisions as 36 U.S.C. § 375(a) including provisions regarding disputes with amateur athletes. Article II governing "objects and purposes" repeats the language contained in 36 U.S.C. § 374 which addresses the swift resolution of conflicts involving amateur athletes.

Nevertheless the ASA's provisions are separate and apart from the USOC's constitution and bylaws, and the fact that the latter mirrors the former is not dispositive. Indeed the Court can envision a related situation where a plaintiff brought a suit pursuant to the USOC bylaws Chapter VI, Section 1 governing "Hearing Procedures." According to Section 1,

> At any hearing conducted pursuant to the filing of a challenge or a complaint, as provided in Article VIII; Article IV, Section 4(C); or Article VI, Section 3 of the Constitution, all parties shall be given a reasonable opportunity to present oral or written evidence, to cross examine witnesses, and to present such factual or legal claims as desired. Hearings shall be open to the public. In addition, the proceedings shall be stenographically recorded and a verbatim transcript thereof made available to each interested party upon request and payment thereof. The rules of evidence shall not be strictly enforced; instead rules of evidence generally accepted in administrative proceedings shall be applicable.

This section applies to hearings regarding an NGB's continued recognition by the USOC. *See* USOC Const. Art. VI, § 3. Continued recognition depends in part upon compliance with the rules of membership contained in Article IV of the USOC constitution. One of these requirements is that the NGB provide an athlete with "fair notice and hearing" before declaring the athlete ineligible to compete. USOC Const. Art. IV, § 4(C)(6).

If the plaintiff brought suit pursuant to bylaw Chapter VI, Section 1, which she may well ultimately invoke, the defendants would be unable to point to a corresponding provision in the ASA. Accordingly, this suit would sound solely in contract and there would be no ground upon which to base federal question jurisdiction. By analogy, the Court finds that there is also no basis for invoking the Court's jurisdiction over a breach of contract claim based on the USOC bylaws simply because the contract provisions at issue may be the result of a statutory requirement. *Cf. Harding, supra* (granting an injunction based in part upon the plaintiff's breach of contract claims against an NGB).

At its foundation, this is a case for an alleged breach of a contract or rules. While it is true that the merits of this lawsuit may at some point involve the interpretation of a federal statute, namely the Amateur Sports Act of 1978, this possibility does not recharacterize the nature of Foschi's claims. The plaintiff alleges that under the USOC's constitution and bylaws and the USS's rules and regulations she was entitled to certain "due process" rights. She further alleges that the defendants abridged these rights. There is nothing unique about the provisions underlying the claims, and there is no reason why they cannot be interpreted in the New York Supreme Court in Nassau County as opposed to the United States District Court in Uniondale. Accordingly, this Court lacks subject matter jurisdiction to hear this case pursuant to 28 U.S.C. § 1331.

As a final matter with respect to this issue, the Court notes that the defendant makes an alternative argument that even if the plaintiff has not otherwise stated a cause of action under the ASA, this Court should retain jurisdiction under the "complete preemption doctrine." *See* 13 Wright, Miller & Cooper, *supra* at § 3522 (1995 Supp.) (recognizing this "narrow exception"); *Howard v. National Educ. Ass'n of N.Y.*, 849 F.Supp. 12, 15 (N.D.N.Y.1994) (applying the doctrine in the ERISA context). This doctrine, the "complete preemption doctrine," applies where Congress so completely preempts a particular area that any civil complaint raising this select group of claims is necessarily federal in character. *Id.*, citing, *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63–64, 107 S.Ct. 1542, 1546–47, 95 L.Ed.2d 55 (1987). However, this doctrine should be applied only in "extraordinary" circumstances. *See Caterpillar v. Williams*, 482 U.S. 386, 393, 107 S.Ct. 2425, 2430, 96 L.Ed.2d 318 (1987); *see also* 13 Wright, Miller & Cooper, *supra* at § 3522 (1995 Supp.) (recognizing that this doctrine has only been applied in limited circumstances).

Employing this standard, the Court declines to apply the complete preemption doctrine in this case. The complete preemption doctrine generally applies only to cases brought pursuant to the Employee Retired Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.* and section 301 of the Labor Management Relations Act, 29 U.S.C. § 185. *See Howard, supra* citing, *Avco Corp. v. Aero Lodge No. 735, Int'l Ass'n of Machinists & Aerospace Workers*, 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968) (applying the complete preemption doctrine to § 301 claims); *Lupo*, 28 F.3d at 272–73 (applying the complete preemption doctrine in the ERISA context). This doctrine is rarely applied outside those contexts. Accordingly, the Court declines to extend its applicability in this instance.

### B. *Diversity of citizenship*

The defendants also contend that this Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332, which provides that the district courts have original jurisdiction over "all civil actions where the matter in controversy exceeds the sum or value of $50,000, exclusive of interest and costs, and is between ... citizens of different states." As stated above, the removing party has the burden of establishing subject matter jurisdiction. *R.G. Barry Corp. v. Mushroom Makers, Inc.*, 612 F.2d 651, 655 (2d Cir.1979).

Foschi contends that this Court does not have diversity jurisdiction for two reasons. First, this lawsuit does not meet the amount in controversy requirement. Second, the parties are not from diverse states. However, because the Court agrees with the first argument, it need not address the second, which is extremely complex.

This lawsuit does not satisfy the amount in controversy requirement necessary to invoke this court's diversity of citizenship jurisdiction. As stated above, for the federal courts to assert diversity of citizenship jurisdiction, the amount in controversy must exceed $50,000. 28 U.S.C. § 1332. The removing party must show a "reasonable probability" that the claim is for more than the jurisdictional amount. *Tongkook Am. Inc. v. Shipton Sportswear Co.*, 14 F.3d 781, 784 (2d Cir.1994). The amount in controversy is generally viewed from the perspective of the plaintiff. *Kheel v. Port of New York Authority*, 457 F.2d 46, 49 (2d Cir.), *cert denied*, 409 U.S. 983, 93 S.Ct. 324, 34 L.Ed.2d 248 (1972).

This case does not satisfy the amount in controversy requirements under 28 U.S.C. § 1332. The plaintiff seeks declaratory and injunctive relief against the defendants so that she may participate in amateur swimming competitions. Success in these competitions will not result in immediate financial gain. As the plaintiff points out in her motion papers, acceptance of financial prizes would result in a loss of her amateur status and her eligibility to swim in college and possibly with USS. Moreover, the plaintiff expressly limits the amount she seeks to less than $50,000. While this artificial limitation on the prayer for relief is not binding on the Court, it does indicate the bounds of the remedy Foschi seeks. Although the defendants contend that Foschi would be entitled

to a total of $65,000 in prize money if she receives a gold medal at the Olympics, and might qualify for an athletic scholarship for college, the Court finds that such propositions constitute nothing more than speculation insufficient to give this Court diversity jurisdiction where none otherwise exists. Accordingly, this Court lacks diversity of citizenship jurisdiction over this case.

### C. *Costs and disbursements*

■ Finally, the Court notes that the plaintiff moves for costs and disbursements associated with the removal and the motion to remand because the removal was frivolous. That motion is denied. This area of the law is extremely complicated and the related jurisdictional issues are difficult to navigate. Accordingly, the Court finds that the defendants efforts to have this case heard in the federal courts was reasonable, and penalizing them for their efforts is unwarranted.

### III. *Conclusion*

After reviewing the submissions of both parties, and hearing oral argument, and for the reasons set forth above, it is hereby

ORDERED, that the plaintiff's motion to remand this case pursuant to 28 U.S.C. § 1447(c) back to the New York State Supreme Court, Nassau County is granted; it is further

ORDERED, that the plaintiff's motion for costs and disbursement associated with the removal and motion to remand is denied; and it is further

ORDERED, that the Clerk of the Court close this case.

SO ORDERED.