**Ilyse Gellar STERNBERG, Plaintiff,**

v.

**U.S.A. NATIONAL KARATE–DO FEDERATION, INC.,**
**Defendant.**

No. 99 CV 2843.

United States District Court,
E.D. New York.

Dec. 8, 2000.

Jonathan N. Fuchs, New York City, Joseph A. Grob, Moskowitz & Book, LLP, New York City, for Plaintiff.

Frederick M. Molod, Molod, Spitz, DeSantis & Stark, New York City, for Defendant.

## MEMORANDUM and ORDER

WEINSTEIN, Senior District Judge.

### I. INTRODUCTION

This case raises a question of apparent first impression with respect to the rights of female athletes to compete in the Olympics. Plaintiff seeks redress for alleged violations of Title IX of the Education Amendments of 1972 ("Title IX"), the Amateur Sports Act ("Sports Act"), and the Fifth Amendment to the United States Constitution. Defendant moves to dismiss the complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. The motion is denied for the reasons stated below.

### II. FACTS

The United States Olympic Committee ("Olympic Committee") is a not-for-profit

corporation that was chartered pursuant to the Amateur Sports Act of 1978. *See* 36 U.S.C.A. § 220522 (1994). Defendant concedes that the Olympic Committee receives substantial sums of money from the federal government.

The Olympic Committee recognizes the United States of America National Karate Do Federation ("Karate Federation") as the national governing body for the sport of karate. While the Karate Federation does not receive any direct federal funding, the Olympic Committee did provide over forty million dollars to all national governing sports bodies, including the Karate Federation, in 1999. Without specifying an exact amount, Plaintiff alleges that the Karate Federation received direct and indirect funding from the Olympic Committee, and thus from the United States government.

Plaintiff is a member of the Karate Federation. She was selected as a member of the 1998 Women's Kumite (Karate sparring) Team after training in one of the Federation's camps. In 1998, she traveled to Brazil, expecting to compete for a position on the United States Women's Kumite Team in the World Championships.

Prior to the competition, the Karate Federation withdrew the Women's Kumite Team. The Men's Kumite Team participated in the World Championship. Plaintiff filed a grievance with the Karate Federation.

According to the plaintiff, Terrance Hill, the Women's Kumite Team coach, told her that the team was withdrawn because two members refused to participate and the Federation could not field a team without the requisite number of members. Plaintiff, however, alleges the two teammates referred to by coach Hill denied that they had refused to participate, indicated that they did not participate only because coach Hill and the Federation discouraged them, and that coach Hill did not want the team to participate for fear of the risk of injury to women.

It is plaintiff's view that the Federation did not conduct an impartial and unbiased investigation of her complaint. She contends that Dr. Julius Thiry, the president of the Karate Federation, assigned Thomas Burke, his personal Karate student and personal attorney, to investigate her claim; Dr. Thiry in turn arranged for a grievance board comprised almost entirely of his personal Karate students. Dr. Thiry allegedly attempted to prejudice Plaintiff's witnesses, pressured her husband to influence her to drop her grievance, and threatened her husband with the loss of his position as chairman of the Karate Federation Referee Council. After this lawsuit was brought, the Karate Federation removed Plaintiff's husband from his position as chairman of the Karate Federation Referee Council; he is not a party to the suit.

## III LAW AND APPLICATION

### A. 12(b)(6) standard

"A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief ...". *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). In deciding a Rule 12(b)(6) motion, the court "must presume that the general allegations in the complaint encompass the specific facts necessary to support those allegations." *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 104, 118 S.Ct. 1003, 1017, 140 L.Ed.2d 210 (1998).

### B. Title IX of the Education Amendment of 1972 (20 U.S.C. § 1681 et. seq.)

Title IX provides that "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a)(1994). A recipient of federal assistance includes any organization:

to whom federal financial assistance is extended directly or through another recipient and which operates an educational program or activity which receives or benefits from such assistance.

34 C.F.R. § 106.2(h).

■ "In order to implicate Title IX in the first instance, an entity must have features such that one could reasonably consider its mission to be, at least in part, educational." *O'Connor v. Davis*, 126 F.3d 112, 117 (2d Cir.1997), *cert. denied*, 522 U.S. 1114, 118 S.Ct. 1048, 140 L.Ed.2d 112 (1998). "[All] forms of federal aid to education, direct or indirect" are encompassed. *Grove City College v. Bell*, 465 U.S. 555, 564, 104 S.Ct. 1211, 79 L.Ed.2d 516 (1984) (a college receives federal financial assistance when it enrolls students who receive federal funds earmarked for education expenses). Whether an organization is an indirect recipient of federal aid when it receives funds from a program that is a direct recipient of federal funding is a mixed issue of law and fact, with fact predominating. *See Bowers v. National Collegiate Athletic Assn.*, 9 F.Supp.2d 460, 494 (D.N.J.1998).

■ Plaintiff claims that the Karate Federation's mission is in part educational and that it provides education programs or activities. She also alleges that the Federation indirectly receives federal funding from the United States government, through direct payments and grants from the Olympic Committee. The specific facts necessary to support or negate these allegations may be developed in discovery. For purposes of a motion to dismiss the complaint, they must be accepted as true.

■ Even if, as urged by defendants, there must be some connection between the funds received by the Karate Federation and the particular activity for which plaintiff claims discrimination, the complaint supports such a nexus. For example, the training camp run by the Federation in which plaintiff participated and the related prepatory contests it conducted in connection with the international competition could constitute an education program or activity. Tournament Kumite training seems to embody a distinct educational philosophy and psychology, in addition to sporting techniques. *See, e.g.*, "What is Kumite?" (Visited December 4, 2000) <http://www. halifax-jka. homepage.com/ kumite.htm> ("Kumite means using your skill. To be free from intentions or plans. To act with mental and physical balance. And, eventually, to live with peaceful intentions."). Plaintiff has stated a valid Title IX claim.

C. Equal Protection Clause of the United States Constitution

■ The Fourteenth Amendment to the United States Constitution provides that no state may deny equal protection to any person within its jurisdiction. A similar federal protection is guaranteed by the Fifth Amendment. *See, e.g., Bolling v. Sharpe*, 347 U.S. 497, 500, 74 S.Ct. 693, 98 L.Ed. 884 (1954)("it would be unthinkable that the same Constitution would impose a lesser duty on the Federal Government"); *Furlong v. Shalala*, 156 F.3d 384, 392 (2d Cir.1998). A threshold requirement of plaintiff's equal protection claim is a "demonstration that in denying plaintiff's constitutional rights, the defendant's conduct constituted" government action. *Desiderio v. National Association of Securities Dealers*, 191 F.3d 198 (2d Cir.1999).

Defendant cites *San Francisco Arts & Athletics, Inc. v. United States Olympic Committee*, 483 U.S. 522, 547, 107 S.Ct. 2971, 2986–2987, 97 L.Ed.2d 427 (1987), for the proposition that the Olympic Committee is not a governmental actor for purposes of the Fifth Amendment. *San Francisco Arts* is not relevant. The Court there dealt with the power of the Committee to bar the use of the word "Olympics" in connection with an athletic event, not its power to discriminate against female athletes. *Id.* at 546, 107 S.Ct. at 2896. At issue was the Olympic Committee's decision to boycott the 1980 Olympic Games in

Moscow as part of a presidential and congressional decision. *Id.* at 551–552, 107 S.Ct. at 2988 (1987) (Brennan, J., dissenting). *San Francisco Arts* must be limited to its peculiar facts. While the Supreme Court found that the "choice of how to enforce its exclusive right to use the word 'Olympic' simply is not a governmental decision," *Id.* at 547, 107 S.Ct. at 2986 (1987), withdrawal of an official United States team from World Championships for reasons of gender discrimination athlete may be.

■ Private entities may be held to constitutional standards if their actions are "fairly attributable" to the government. *See, e.g., Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 937, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982). In *Malesko v. Correctional Services Corporation,* for example, the court of appeals for the Second Circuit held that a Bivens claim based upon a constitutional violation could be brought not only against an individual federal agent, but also against private corporations acting under the color of federal law. *Malesko v. Correctional Services Corporation,* 229 F.3d 374, 377 (2d Cir.2000). The court found that "extending Bivens liability to reach private corporations furthers *Biven's* overriding purpose: providing redress for violations of constitutional rights." *Id.* at 380.

■ Conduct that constitutes state action must be determined on a case-by-case basis by "sifting facts and weighing circumstances." *Evans v. Newton,* 382 U.S. 296, 299–300, 86 S.Ct. 486, 488–489, 15 L.Ed.2d 373 (1966); *see also, e.g., Blum v. Yaretsky,* 457 U.S. 991, 1004–05, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982) (setting forth criteria for determining state action). While the Karate Federation does not receive any direct federal funding, the Olympic Committee did provide a total of over forty million dollars to all national governing sports bodies, including the Karate Federation, in 1999. Without specifying an exact amount, Plaintiff alleges that the Karate Federation received direct and indirect funding from the Olympic Committee, and thus from the United States government, and in fact was carrying out a federal program. Without further development of the facts, it is not possible to conclude that the Karate Federation was not acting under the color of federal law.

D. Ted Stevens Olympic and Amateur 1978 Amateur Sports Act of 1978 (36 U.S.C. §§ 220501 et. seq.) ("Sports Act")

One of the primary purposes of the 1978 Amateur Sports Act is to "encourage and provide assistance to women in amateur athletic activity." 36 U.S.C.A. § 220503 (1994). As a national governing body, the Karate Federation has a duty, without regard to gender, to provide amateur athletes with an equal opportunity to participate in amateur athletic competition; discrimination on the basis of sex is forbidden. *See* 36 U.S.C.A. § 220522(a)(8) ("an equal opportunity to amateur athletes, coaches, trainers, managers, administrators, and officials to participate in amateur athletic competition, without discrimination on the basis of race, color, religion, sex, age, or national origin"). The duties of the Federation as "a national governing body" include providing "equitable support and encouragement for participation by women where separate programs for male and female athletes are conducted on a national basis." 36 U.S.C.A. § 220524(6). The Federation must designate individuals to represent the United States in international amateur athletic competitions and allow such individuals to compete in such competitions, provided that the organization conducting the competition meets the requirements of the Sports Act. *See* 36 U.S.C.A. § 220523(a)(7) (governing body may "designate individuals and teams to represent the United States in international amateur athletic competition)" and 36 U.S.C.A. § 220524(5) (governing body shall "allow an amateur athlete to compete in any international amateur athletic competition

conducted by any amateur sports organization or person" unless the body demonstrates denial comports with the Sports Act). It is not contested that the Karate Federation is a national sports governing body subject to the Sports Act and to its anti-discrimination provisions.

### 1. Private Right of Action under the Sports Act

■ Even if a statute does not specifically provide for a private cause of action, one may be implied. *See Cannon v. University of Chicago*, 441 U.S. 677, 688, 99 S.Ct. 1946, 1953, 60 L.Ed.2d 560 (1979); *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975). In deciding whether Congress designed the Sports Act to permit a private remedy for violations the following four *Cort* factors must be considered:

> 1) whether the *plaintiff is "one of the class for whose especial benefit the statute was enacted* . . .—that is, does the statute create a federal right in favor of the plaintiff"; 2) whether there is "any indication of legislative *intent,* explicit or implicit, *to create such a remedy or deny one"* ; 3) whether it is "*consistent with the underlying purposes of the legislative scheme* to imply such a remedy for the plaintiff"; and 4) whether the cause of action is "one traditionally relegated to state law, in *an area basically the concern of the States,* so that it would be inappropriate to infer a cause of action based solely on federal law."

*Alaji Salahuddin v. Alaji*, 232 F.3d 305 (2d Cir.2000) (citing *Cort v. Ash*, 422 U.S. at 78, 95 S.Ct. 2080) (emphasis added).

In analyzing these factors, cases subsequent to *Cort* have refined the inquiry looking to the "dispositive question" of Congressional design to create a private right of action. *Alaji Salahuddin v. Alaji*, 232 F.3d 305 (2d Cir.2000); *Touche Ross & Co. v. Redington*, 442 U.S. 560, 568, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979) ("[T]he first three factors discussed in *Cort* 'the language and focus of the statute, its legis-

lative history, and its purpose' are ones traditionally relied upon in determining legislative intent"). Plaintiff's case meets the first, third and fourth prongs of the *Cort* inquiry. *Cort,* 422 U.S. at 78, 95 S.Ct. 2080.

The plaintiff is a female, "one of the class for whose especial benefit the statute was created." *Id.* The purpose of the Sports Act includes encouraging and providing "assistance to amateur athletic activities for women." 36 U.S.C.A. § 220503(12). The language of this statute—which expressly identifies the class Congress intended to benefit—is consistent with that found in statutes enacted to protect specific classes of people. *See Cannon,* 441 U.S. at 690, 99 S.Ct. 1946 (implied right of action proper for Title VI, Title IX, and Voting Rights Act when statutory language expressly identified class Congress intended to benefit). The statute dictates that national sports governing bodies provide an equal opportunity to amateur athletes to participate in amateur athletic competition without discrimination on the basis of sex. Plaintiff is a female amateur athlete seeking redress for violation of that duty of non-discrimination.

A private remedy is consistent with the "underlying purposes of the legislative scheme". *Alaji Salahuddin v. Alaji,* 232 F.3d at 308. One of the primary goals of the Sports Act is to "encourage and provide assistance to women in amateur athletic activity." 36 U.S.C.A. § 220503 (1994). The duties of the Federation include providing "equitable support and encouragement for participation by women where separate programs for male and female athletes are conducted on a national basis." 36 U.S.C.A. § 220524(6). Like Title VI and Title IX, the Sports Act seeks to accomplish two related objectives—to "avoid the use of federal resources to support discriminatory practices" and "protect individual citizens against those practices." *Cannon,* 441 U.S. at 703, 99 S.Ct. 1946. Private federal enforcement furthers these purposes. *Cf. Alaji Salahuddin v. Alaji,*

232 F.3d 305, 308 (2d Cir.2000). It is the athlete who suffers the discrimination who has a strong incentive to sue on her own behalf, thus giving practical and effective content to the statute. Congress's words were not purely precatory.

The subject matter does not involve an area traditionally relegated to the States. *See Cort,* 422 U.S. at 78, 95 S.Ct. 2080. As pointed out in *Cannon,* "the Federal Government and the federal courts have been the 'primary and powerful reliances' in protecting citizens against [discrimination on the basis of sex]." *Cannon v. University of Chicago,* 441 U.S. 677, 708, 99 S.Ct. 1946, 1964, 60 L.Ed.2d 560 (1979) (citing *Steffel v. Thompson,* 415 U.S. 452, 464, 94 S.Ct. 1209, 1218, 39 L.Ed.2d 505 (1974), quoting F. Frankfurther & J. Landis, The Business of the Supreme Court 65 (1928)).

 Critical is the second *Cort* factor—the design of Congress to provide a private remedy. An "explicit legislative purpose" to deny a private cause of action is controlling. *See Cannon v. University of Chicago,* 441 U.S. 677, 694, 99 S.Ct. 1946, 1956, 60 L.Ed.2d 560 (1979) (*citing Cort v. Ash,* 422 U.S. at 82, 95 S.Ct. 2080). Here there is no congressional expression. Nonetheless, a private right of action may still be implied from a statute prohibiting conduct deleterious to individuals. *See Touche Ross & Co. v. Redington,* 442 U.S. at 569, 99 S.Ct. 2479 (citing *Cannon v. University of Chicago, supra* (20 U.S.C. § 1671), *Johnson v. Railway Express Agency, Inc.,* 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975) (42 U.S.C. § 1981)).

The legislative history of the Sports Act does not indicate that Congress wished to foreclose a private right of action. Prior to passage of the Sports Act, Congress removed the athlete's "bill of rights," which would have explicitly granted a private right of action to anyone who was discriminatorialy denied the right to participate in specific events. This history has led some courts to conclude that plaintiffs have no private right of action under the Sports Act. *See, e.g. Martinez v. Unit-ed States Olympic Committee,* 802 F.2d 1275 (10th Cir.1986), *Michels v. United States Olympic Committee,* 741 F.2d 155 (7th Cir.1984), *DeFrantz v. United States Olympic Committee,* 492 F.Supp. 1181 (D.D.C.), aff'd. without opinion, 701 F.2d 221 (D.C.Cir.1980); *but see United States Wrestling Federation v. Wrestling Division of AAU, Inc.,* 545 F.Supp. 1053 (N.D.Ohio 1982), *aff'd,* 711 F.2d 1060 (6th Cir.1983). Yet, the "bill of rights" might have been eliminated because it was too detailed and Congress was reluctant to interject itself too deeply into sports concepts that were still developing. The court of appeals for the Second Circuit has not yet addressed the matter.

Arguably, Congress struck the "bill of rights" to prevent countless lawsuits from disgruntled would-be athletes. *Cf. De-Frantz v. United States Olympic Committee,* 492 F.Supp. 1181, 1188–89 (1980) ("The provision on which plaintiffs place reliance by analogy is specifically concerned with eliminating the feuding between various amateur athletic organizations and national governing bodies which for so long characterized amateur athletics."). Fear of such lawsuits could hinder teams from making decisions based purely on athletic ability. Thus, Congress might simply have sought to eliminate a *broad* private right of action. There is no indication, however, that the athlete's "bill of rights" was removed from the legislation to prevent women from exercising a private right of action under the Sports Act in cases involving gross gender discrimination of the type plaintiff alleges. Such suits would be limited in scope since, for example, they would not involve competition between males on men's teams or between females on women's teams.

Congress has enunciated a strong policy against discrimination on the basis of gender. *See Santa Clara Pueblo v. Martinez,* 436 U.S. 49, 98 S.Ct. 1670, 56 L.Ed.2d 106 (1978) (recognizing the "propriety of inferring a federal cause of action for the enforcement of civil rights, even when Congress has spoken purely in declarative

terms") (citations omitted). Where the conduct involves discrimination between men and women, there is a strong presumption that this national policy is reflected in the creation of a private right of action. *Cf. Cannon,* 441 U.S. 677, 693 n. 13, 99 S.Ct. 1946, 60 L.Ed.2d 560 ("because the right to be free of discrimination is a 'personal' one, a statute conferring such a right will almost have to be phrased in terms on the persons benefitted.").

The legislative history does not demonstrate that the athlete's "bill of rights" was removed to prevent women from exercising a private right of action under the Sports Act in cases involving discrimination. The other three *Cort* factors point toward an implied private right of action. *Cf. Touche Ross & Co. v. Redington,* 442 U.S. at 569 (silence of legislative history considered along with plain language and purpose of statute to determine private remedy). A narrow right of action regarding sex discrimination by national governing sports bodies may be implied.

### 2. Failure To Exhaust Administrative Remedies

A member of a national governing body may seek to compel the national governing body to comply with the Sports Act by filing a written complaint to the Olympic Committee. *See* 36 U.S.C.A. § 220527(a). If the party disagrees with the disposition of her complaint, she "may" now obtain review by the American Arbitration Association. *See* 36 U.S.C.A. § 220529. Thus, the statute allows for arbitration, but does not require it. Plaintiff alleges the Karate Federation's Bylaws do not require one of the members to seek binding arbitration to resolve a controversy involving her opportunity as an amateur athlete; they do require the Federation to submit to binding arbitration to resolve such a controversy.

If administrative remedies will not address a plaintiff's claim for monetary damages, exhaustion of administrative remedies is not required. *See Barbara v. New York Stock Exchange,* 99 F.3d 49, 57 (2d Cir.1996). When the administrative body has demonstrated a bias or a predetermination of issues before it, the exhaustion of administrative remedies is not required. *See McCarthy v. Madigan,* 503 U.S. 140, 146–147, 112 S.Ct. 1081, 1087–1088, 117 L.Ed.2d 291 (1992).

Administrative remedies will not address Plaintiff's claim for monetary damages since neither the grievance procedure of the Karate Federation nor that of the Sports Act provide for monetary damages. In addition, Plaintiff alleges that the administrative body of the grievance procedure demonstrated an inability to process her grievance in a fair and impartial manner. These factual issues may be developed through discovery. Plaintiff may be able to demonstrate that exhaustion of administrative remedies is not a prerequisite to her bringing this Sports Act claim.

### IV. CONCLUSION

The motion to dismiss the complaint is denied.

SO ORDERED.